ELEOTA R. GRAVES, Respondent, *v.* THE KNIGHTS OF THE MACCABEES OF THE WORLD, Appellant.

Third Department, November 11, 1908.

*Insurance — by-law of beneficial society construed — prohibition against "engaging" in saloon business — financial interest does not avoid insurance — construction of ambiguous words.*

By-laws of a fraternal beneficial society providing that no person shall be admitted as a beneficial member who is " engaged " in certain specified occupations, as blasting, mining, etc., or other occupations deemed " extra hazardous," and that no person shall be eligible for membership who is " engaged " either as principal, agent or servant in the manufacture or sale of liquors as a beverage and that the benefit certificate of any member engaging in said prohibited

occupations shall become void, should be construed to prohibit members from actually engaging in such occupations and not from being financially interested therein.

Hence, a member who with his son as copartner opened a saloon, but did not attend the bar or perform any manual labor therein or have any part in the business other than a financial interest, was not "engaged" in such business, and on his death his beneficiary may recover from the society.

The word " engage " defined.

Where a word as used in such by-law is susceptible of two interpretations, it will be given that most favorable to the insured.

SMITH, P. J., dissented.

APPEAL by the defendant, The Knights of the Maccabees of the World, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county on Onondaga on the 24th day of August, 1907, upon the verdict of a jury, and also from an order entered in said clerk's office on the 24th day of August, 1907, denying the defendant's motion for a new trial made upon the minutes.

*Love & Keating* [*George P. Keating* of counsel], for the appellant.

*Frank C. Sargent* and *Frank R. Lennox*, for the respondent.

COCHRANE, J.:

This is an action on two policies or certificates of insurance issued by the defendant on the life of plaintiff's husband. The defendant is a fraternal beneficial society existing under the laws of Michigan. The insured died in June, 1905. The first certificate on his life was issued in 1893 for $1,000. In 1896 this was increased to $3,000. In 1898 this was replaced by another certificate to other beneficiaries, and four days before the death of the insured another certificate for the like amount of $3,000 was issued, the apparent object being to change the beneficiaries. It is alleged in the complaint and conceded by the answer that this last certificate contained all the provisions of the former "and it took the place of such said certificate." Another certificate for $2,000 was issued in 1896. On these two outstanding certificates with interest plaintiff has recovered.

In 1895 defendant enacted a by-law as follows: "No person

shall be admitted as a beneficial member of this Order who is engaged in any of the following occupations : Blasting, coal mining, submarine operations, manufacturing highly inflammable or explosive materials, nor who is an aeronaut or lineman in the employ of electric companies, either in the construction or repairing of lines over which the electric current passes, or who is engaged in any other occupation deemed extra hazardous by the Supreme Medical Examiner, and no person shall be eligible for membership in the Order who is engaged either as principal, agent or servant in the manufacture or sale of spirituous, malt or vinous liquors as a beverage, and should any beneficial member of the Order engage in any of the above named prohibited occupations after his admission, his benefit certificate shall become null and void from and after the date of his so engaging in such prohibited occupation, and he shall stand suspended from all rights to participate in the benefit funds of the Order."

The defense is that the insured violated this by-law by engaging in the saloon business. About six months before his death he with his son, as copartners, opened a saloon. The license was issued in their names jointly and there is no question about his pecuniary interest in the business. It appears, however, that the deceased did not attend bar or perform manual labor in the saloon or take any part in the business except to have his financial interest therein. His health began to fail before going into that business and continued to fail until he died. He lived in the building over the saloon.

The question turns on the word "engaged" as used in the said by-law. Plaintiff claims that it means an active or physical management or connection with the liquor business, and not merely a pecuniary interest. In 15 Cyc. (at p. 1047) the word "engage" is defined as follows : "To take a part; to devote attention and effort; to employ one's self; to enlist; to carry on; to conduct." Among the definitions of the word given by the Century Dictionary are the following: "To occupy one's self; be busied; take part;" and the word "busy" is defined among other ways as follows: "Actively or attentively engaged; closely occupied physically or mentally; * * * opposed to idle; * * * in constant or energetic action; * * * filled with active duties or employment." So from these defini-

tions a doubt or ambiguity arises as to the meaning with which the word was used in the by-law and plaintiff's contention at once assumes a phase of plausibility.

But there is a further reason which influences me in the construction of this by-law. The word "engaged" is used several times therein and in one sentence thereof. It will not be questioned that it should receive the same interpretation wherever in that sentence it occurs. In the first part of the sentence it is used in connection with dangerous and perilous occupations or such as are characterized in the by-law itself as being "extra hazardous." It was plainly the design of the by-law to guard the defendant against the risk of hazardous or dangerous vocations and there is certainly no reason why the prohibition should apply to one who was merely a financial backer or pecuniarily interested in one of those dangerous employments without taking an active or physical part therein. What the defendant evidently intended was to prohibit its members from taking risks or hazards which might tend to increase its liability. It is quite true that there is a moral question involved in the liquor business but we cannot consistently change the meaning of the word "engaged" used as it is indiscriminately in the by-law in reference to all the prohibited occupations unless required to do so by the context. They are all grouped together and characterized in the by-law by the word "occupations," which word may itself imply activity as distinguished from mere passiveness. The plain purpose of the defendant in this by-law was not to protect its members against moral risks of engaging in unworthy or questionable vocations but to protect itself against the pecuniary risk of having its members engage in occupations dangerous to their health or lives and evidently the liquor business was deemed to be fraught with a dangerous tendency or possibility to the health of those who might actively engage therein.

In my opinion the word "engaged" as used in this by-law is susceptible of two interpretations and if that is so the rule applies that it should receive the interpretation most favorable to the plaintiff because the defendant is responsible for the language used. (*Janneck* v. *Metropolitan Life Ins. Co.*, 162 N. Y. 574; *Kratzenstein* v. *Western Assurance Co.*, 116 id. 59; *Allen* v. *St. Louis Ins. Co.*, 85 id. 473; *Herrman* v. *Merchants' Ins. Co.*, 81 id. 184.)

It would have been very easy for the defendant if it had intended the meaning for which it is now struggling to have substituted the word "interested" for the word "engaged." The distinction between the two words is apparent and is pointed out in *People* v. *Gregg* (59 Hun, 107) where it was held that an indictment was defective which charged that the defendant did "engage" in the manufacture and sale of spirituous liquors in violation of a statute which prohibited him from being "interested" in such manufacture or sale, the court saying: "The allegation of the indictment might be strictly true, and yet the defendant might in no way be *inter ested* in the manufacture or sale, within the language of the statute; he might be a common laborer in a brewery or distillery, or an engineer running a distillery, and thus engaged in the manufacture of distilled or fermented liquors, and yet be in no way *interested* in its manufacture; and the same might be said of an agent employed by the month to sell, or a teamster employed under a salary for its delivery, and yet having no interest in the business."

The judgment and order should be affirmed, with costs.

All concurred, except SMITH, P. J., dissenting.

Judgment and order affirmed, with costs.