[File No. 6887]

STATE OF NORTH DAKOTA EX REL. MARY KUSIE, Respondent, v. L. E. WEBER, Appellant.

(10 NW(2d) 741)

Opinion filed August 13, 1943.   Rehearing denied August 27, 1943.

*Geo. F. Shafer,* and *M. L. McBride,* for appellant.
*C. H. Starke,* for respondent.

BURR, J.   This action is brought under the provisions of § 396a11 of the Supp. which provides among other things, that where an employer engaged in a hazardous occupation, and required to "contribute to the North Dakota workmen's compensation fund in proportion to the annual expenditure of money by such employer for the service of persons subject" to the provisions of the workmen's compensation act, fails to do so, an employee "injured in the course of his employment, wheresoever such injury has occurred   .   .   .   may, in lieu of proceeding against his employer by civil action in court, file his application with

the workmen's compensation bureau for an award of compensation in accordance with the terms" of this act, "and the bureau shall hear and determine such application for compensation in like manner as in other claims before the bureau; but the amount of the compensation which said bureau may ascertain and determine to be due to such injured employee . . . together with reasonable costs and attorneys' fees allowed by the bureau, shall be paid by such employer to the person or persons entitled thereto within thirty days after receiving notice of the amount thereof as fixed and determined by the bureau. In the event of the neglect, failure or refusal of the employer to pay such award within said thirty days, the same shall constitute a liquidated claim for damages against such employer in the amount so ascertained and fixed, which, together with such further costs and attorney fees as may be allowed by the court, may be recovered in an action in the name of the state for the benefit of the person or persons entitled thereto. . . . "

Herein Mary Kusie is designated as the plaintiff, and in her complaint she sets forth allegations which constitute a cause of action as an injured employee under the provisions of this statute just quoted, and the answer "denies generally and specifically each and every allegation contained in the plaintiff's complaint. . . ."

The bureau made an award, after hearing, and the defendant failed to pay.

The case was tried to the court without a jury. The court found for the plaintiff as awarded by the bureau. Judgment was entered accordingly and the defendant has appealed from the judgment "and from the whole thereof."

There are four specifications of error. The first alleges the court erred in finding the defendant "was the owner of the premises on which the accident occurred." This is immaterial. If the plaintiff was an employee injured in the course of her employment, it makes no difference where the accident occurred. The same holds in regard to specification No. 3 alleging error in ordering judgment in favor of the plaintiff. If the plaintiff was an employee injured in the course of her employment, there was no error in ordering judgment for her.

Specification No. 2 is as follows: "That the court erred in its con-

clusions of law, wherein the court concluded as follows: 'That the injury received by the relator and for which the award for which this action was brought was made, was received in the course of the employment of the plaintiff by the defendant.' "

Specification No. 4 is as follows: "That the court erred in refusing to grant the defendant's motion to dismiss the action, the motion being as follows:

" 'The defendant moves that this action be dismissed on the ground and for the reason that the (evidence) adduced wholly fails to show that at the time the plaintiff, Mrs. Kusie, was injured, she was in the employment of the defendant or that the injury took place or arose out of or in connection with any contemplated employment; . . .' "

Our law does not limit compensable injuries to those arising out of the employment. If the worker is an employee, injured in the course of employment, he is entitled to an award.

Both sides agree that the sole issues are: Was the plaintiff an employee of the defendant, and if so, did the accident occur in the course of employment?

The conditions expressed by the term "employee" and the expression "engaged in an employment" are so intermingled that we consider the two propositions together. One cannot be engaged in an employment if he is not an employee.

The cases cited by respondent deal: with the place of injury as part of the premises of the defendant; with the proposition that it is not necessary to show the injury arose out of the employment; with the effect to be given to the findings of the trial court; and with cases where there was no question but what the person injured was an employee and involved only the question of whether the injury occurred in the course of employment. None of these cases deal with the crucial point here—was the plaintiff, at the time of injury, an employee engaged in employment?

The findings of the trial court on disputed testimony, and the determination regarding the legal effect of accepted facts are entirely different matters—the latter being purely a question of law.

The terms, "employee," and "injury" as used in this case must be held to have the meanings set forth in the statute dealing with the Workmen's Compensation Act, being Article 11a of chap. 5 of the

Supp. Section 396a1 to § 396a33, inclusive and amendments. Section 396a2 defines the term "employee" so as to include "every person engaged in a hazardous employment under any appointment, or contract of hire . . . express or implied, oral or written . .' . but excluding any person whose employment is both casual and not in the course of the trade, business, profession, or occupation of his employer. . . ." The term "injury" means only "an injury arising in the course of employment. . . ."

While the workmen's compensation statute is to be liberally construed to effect its purpose (Booke v. Workmen's Comp. Bureau, 70 ND 714, 718, 297 NW 779, 781) yet the terms of the statute cannot be ignored; (Wilhelm v. Narregang-Hart Co. 66 SD 155, 279 NW 549) and the plaintiff herein must show she was injured in the course of employment. Booke v. Workmen's Comp. Bureau, supra.

There is little dispute between the parties as to the main facts. The defendant raised hatchery stock, bought poultry, prepared the poultry for market, shipped them, handled turkeys, chickens, and in this work employed people for dressing and buying. He had men employed for "sticking" turkeys and three or four people employed for picking them. He was engaged in a hazardous business as defined by law, and had not made his contributions to the fund.

A day or two prior to the 3d of November, 1940, the plaintiff came to his place of business and inquired if he needed help in picking turkeys, and he said she could go to work if she wanted to. She came back on the 5th, and the record shows the following:

Q. On that day you talked about employing her?

A. She asked if she could pick turkeys. I told her she could.

Q. She could go right to work?

A. Any time she wanted to.

Q. What did she say?

A. She wanted to know if we were going to work in the evening. She said she would be down.

Q. You didn't say she should be down?

A. No, she said she would be down.

Q. You didn't say then "You come down this evening"?

A. I did not.

Q. You didn't tell her to come at 7?

A. I didn't tell her to come at any time.   They work by piece.

Q. Did you tell her what door to come to?

A. She evidently knew where she would have to go to work.

Q. Did you tell her how much pay she would get?

A. I did.

Q. How much?

A. Eight cents a bird.

Q. Nothing was said about coming back that night?

A. Not that I remember.   I told her she could.

He was asked relative to testimony which he gave at the hearing before the bureau as follows:

Q. Was this question asked you and did you give this answer?

Q. "Mrs. Kusie came to work for you about 7 o'clock?"

A. "Mrs. Kusie has never worked one minute for me.   She came in the afternoon, it might have been on the 5th, and asked if I needed any more turkey pickers and I said 'yes, you can go right to work.' She said she would come back after supper.   I wasn't there at the time Mrs. Kusie fell in the hole.   Just like Mrs. Messina said, 'some lady fell in the hole.'   She was in her work clothes when she came down there."

A. I did.

Q. Don't you recall now that you said she could go right to work?

A. I told her she could come back in the evening.

Q. You didn't tell her "right then"?

A. I don't remember it.

Q. Your memory is just as keen now as it was then?

A. Yes.

Q. If you told her she could go right to work and she said she would be back after supper, that was probably true?

A. It is.

Q. And don't you think that is the way it happened?

A. I imagine it was.

Q. You heard about the accident after you came back?

A. I did.

Plaintiff's version is as follows:

Early in November she went to the hatchery.   She said: "I came to buy a chicken.   While I was there I asked him if he had any turkeys

to pick. He told me to come back a little later." She said: "On election day after voting, I stopped at the hatchery and asked if he had any turkeys to pick. He told me I could come to work right away. He told me to come back about 7 o'clock that evening. . . . I told him I would. . . ." He told her, the first time he spoke to her, the pay would be eight cents apiece. She had never worked for Mr. Weber in any capacity, but she was acquainted with him through buying chicken feed and chickens. Late in the afternoon of that day she had asked him about work and he told her she could go to work right away. She told him she could not go to work then and he said she could come back in the evening. She went home, got supper, changed her clothes, and started out to his place of business, intending to do some turkey picking.

The plaintiff was injured as she came to defendant's place of business. She introduced evidence showing the accident was caused by the negligence of the defendant. But this is not an action to recover damages because of the negligence of the defendant. The questions of his negligence, if any, or her contributory negligence, if any, or the assumption of risk are not involved. This is an action based on the theory that at the time of the accident she was engaged in the business of the defendant as his employee. If here she was an employee of the defendant and suffered injury in the course of her employment she would be entitled to an award without reference to the negligence of herself or her employer. If this was not shown, the bureau had no power to make an award.

A person to be an employee under the workmen's compensation act, must be *"engaged in* a hazardous employment under any appointment or contract of hire," made with the employer.

To be engaged in employment means to be rendering service for the employer under the terms of the employment.

The term "engaged in an employment" means more than being merely hired to commence work. As said in State v. Roberson, 136 NC 587, 48 SE 595, 596, "to say that one is engaged in an occupation signifies much more than the doing of one act in the line of such occupation."

"The word 'engage' means to take part in or be employed in, however the employment may arise." See Nowlan v. Guardian L. Ins. Co. 88 W Va 563, 107 SE 177, 179; People v. Corbalis, 86 App Div 531,

83 NYS 782, 784; Graves v. Knights of Maccabees, 128 App Div 660, 112 NYS 948, 950. It means to take part in the work. Smallwood v. Jeter, 42 Idaho 169, 244 P 149, 153.

"The test to determine whether the relation of employer and employee exists . . . is whether person in question is engaged in the discharge of servant's duties for another. . . ." Weber County-Ogden City Relief Committee v. Industrial Commission, 93 Utah 85, 71 P(2d) 177.

A large majority of the cases dealing with "engaged in employment" so far as compensation laws are concerned, deal with situations where the worker is injured in coming to or departing from work. Because he is not working for his employer it is said he is not engaged in employment, except in such variations as riding to work in a conveyance furnished by the employer for such purpose and other special situations.

This court has liberally construed our compensation law, as shown in O'Leary v. North Dakota Workmen's Comp. Bureau, 62 ND 457, 243 NW 805, 808, and has held representatives of an employee entitled to compensation, where the worker "is doing the duty which he is employed to perform." This "doing a duty which he is employed to perform" is again made a basis for recovery in Moug v. Workmen's Comp. Bureau, 70 ND 656, 297 NW 129, 131.

This case presents some peculiar features. The plaintiff never worked for the defendant. She was on her way to defendant's place of business in order to work, if he did not change his mind in the meantime. This is not a case of one who had already worked for the defendant under a contract of hire, and under that contract was coming back to the place of labor. Here, employment never began. The great majority of decided cases, involving the right of employees under workmen's compensation laws with definitions similar to ours, are concerned with those who have been in employ for some time and are returning to work or going away from work, or are on the premises ready to work though for the moment or two not actually working, or in distinguishing between injuries received in the course of employment and those received in the course and arising out of the employment, rather than cases where one claims to be an employee but has never worked though ready to work, or coming to begin work.

The real issue centers around whether plaintiff was engaged in the employment of defendant in the sense used by the statute. The context and the connection in which it is used must largely determine whether in a particular case the term includes a certain person. Empey v. Yost, 182 Wash 17, 44 P(2d) 774, 775. Though this case cited does not involve workmen's compensation action, the principle laid down is applicable here.

One is not an employee within the purview of this statute if he has never been put to work. Until this happens, it can not be said the worker has been *engaged in* an employment. The statute does not say engaged *for* employment. In that case, "engaged" might be construed to mean hired for service. The term "engaged *in* an employment" means working, and one who has never worked, has never started to work, can not be said to be engaged in employment. In Re Spencer Kellogg & Sons (often termed Linseed King Case) (DC) 48 F(2d) 311, 319, this feature is discussed.

This is what was called "a limitation of liability proceeding" brought by the owners of the vessel "Linseed King." A large number of workers were drowned as this launch was being used to carry workers from a pier in New York to the place of work in New Jersey. The owners were desirous of having a declaration limiting their liability to the representatives of these as the disaster was said to have occurred because of the negligence of the owners. The court had ordered the "issuance of a monition against all persons claiming damage from the disaster" and enjoined the prosecution of suits, except as to the filing of claims with the New Jersey workmen's compensation bureau. It is clear that if the owners were not negligent the representatives of many of the drowned persons could not recover from the company. The owners invoked the jurisdiction in admiralty; and it became necessary to determine who were "employees" and this required determination of the question: when is one an employee?

The owners claim that a large number of these persons who had been drowned were employees and therefore no awards should be rendered against the owners as the representatives would be relegated to their rights under the New Jersey Workmen's Compensation Act. Among these were certain men who had been hired to unload a ship which

had not yet arrived. They were told to report for work on a certain day and were coming to the place of labor on that day in a conveyance furnished by the company. The owners claimed these were employees. The court states: "They had done no work and had earned no compensation. The commissioner held that these men were employees. I do not agree. In my opinion, the status of employer and employees had not yet come into existence, and the compensation statute does not apply to these." 48 F(2d) at page 319. This statute was the New Jersey Workmen's Compensation Act.

There were three classes of men killed or injured. The first included those who were what the court terms regular employees and had been with the company for some time, and while they had not commenced work that day and had not received pay for the time spent that day yet they were on their way to work and were being transported in a conveyance owned and operated by the employer to carry them to work and for the convenience of the employer and employees alike. 48 F(2d) at page 315. The district court held these were employees, covered by the New Jersey compensation law, and not entitled to an award against the company. 48 F(2d) at page 319. The third class who were injured in the accident included those who were there merely looking for work in response to an advertisement. These were not employees, and the decision says, "The compensation statute does not cover their cases." Between these two extremes was this second class—those who had been hired to work, had never commenced work, but were on their way to commence their labors. This class, the court held, were not employees, even though they were in the conveyance used for transportation and were on their way to work. They were entitled to judgment against the owners because of negligence under the Federal Seamen's Act.

This decision was affirmed by the circuit court of appeals (CCA 2d) 52 F(2d) 129, and came before the United States Supreme Court. 285 US 502, 515, 76 L ed 903, 914, 52 S Ct 450. Though the decision was reversed in one particular, the Supreme Court of the United States holds that "the court below was right in refusing a limitation of liability and in holding that the applicants for employment who had been told to return on the morning in question were entitled to awards in this proceeding." 285 US 502, 76 L ed 914, 52 S Ct 454. In

other words, the Supreme Court of the United States held the court below was right in holding that the "status of employer and employee had not yet come into existence and the compensation statute does not apply to those cases." The people in this second class were not employees and therefore were not relegated to the state compensation law. The court was right in refusing to thus limit the liability of the owners, and this class was entitled to awards against the company directly because of negligence. The Supreme Court did hold that the lower court had erred in denying awards to some of the other parties not belonging to this second class, "and remitting them to their remedy under the New Jersey Compensation Act," but this special feature has no bearing here.

In the case at bar, the plaintiff was not even as closely associated with the term "employee" as this second class, for she was not in any conveyance furnished by the employer to convey employees to the place of business. Clearly, she does not come under the definition of our statute as being a "person *engaged in* a hazardous *employment* under a contract of hire, etc." Assuming that she had a contract of hire so that if, when she entered the building, the employer had told her there was no work for her, she could have recovered damages for breach of contract, a point not here decided, yet she was not engaged in employment. The relationship between her and the defendant of employee and employer had not been established.

We do not find many decisions directly in point, but there are holdings dealing with such terms in other than compensation cases. The case of State v. Deck, 108 Mo App 292, 83 SW 314, 315, throws some light upon the concept of employer, employee, and employment. In this case the defendant was convicted of the violation of a statute prohibiting child labor. The question was raised as to whether the mere hiring of a protected child for work was "employing" the child, and the court says: "Merely to employ a child to work in one of these establishments does not complete the offense. The offense is not completed until the youth hired is put to work or employed in the establishment." The underlying principle herein expressed is pertinent to the case.

The supreme court of South Dakota had before it for consideration a case wherein the two situations—"employee," and "engaged in em-

ployment"—were attempted to be considered separately. On October 8, 1939, one Isaacson met the general manager of a corporation and terms of employment were agreed upon, Isaacson to commence work on October 12. Isaacson received money for his expenses at the time the agreement was made. On the 9th he left his home to go to the place of employment, and on the 10th, while travelling to the place of employment, he was killed. The court discusses the two propositions, holding in effect he was not yet an employee, though it states: "We, however, prefer to put our decision upon a line of authorities that compensation cannot be recovered for the reason that the accident did not occur in the course of the employment, in that the period of employment had not as yet commenced." Isaacson v. Northern Wholesale Co. 67 SD 405, 293 NW 532, 534. In support of its position the court cites the Linseed King Case (DC) 48 F(2d) 311, supra.

That "engaged in employment" means having been put to work seems to be clearly expressed in Marshall Field & Co. v. Industrial Commission, 285 Ill 333, 120 NE 773, 774. In this case the Supreme Court of Illinois held that the administrator of the estate of one Rice was entitled to recover compensation for the death of the deceased under the workmen's compensation law, as an employee; and therein shows that the decedent had not only been hired to work, "but he was put to work." This bears out the principle that in the relationship of employer and employee the contract for hire must ripen into actual work; the employee must be *engaged* in work. Work having been begun, the person having been put to work, or started work for the employer, the relationship was complete and such person thereafter would be considered an employee as long as the relationship remained. This still leaves room for distinction between cases where a person is an employee, and at the time he receives the injury he may be rsting temporarily, etc., and those cases where he is going to or returning from work and similar issues. These features are not considered.

In School Dist. v. Dilman, 22 Ohio St 194, it was claimed that the law of the state forbiding the employment as a teacher of one who did not hold a teacher's certificate had been violated because of a contract entered into with one who did not have such certificate, though he obtained one before the time for beginning his services. The court in construing the word "employed," stated that one "is not 'employed' un-

til he engages in the discharge of his duties as a teacher." Under this holding the period of employment did not begin until the work began—that is, until the teacher engaged in the work—and as at that time he had a certificate the law had not been violated for the employment did not begin until the later period.

In this case at bar the plaintiff was not an employee engaged in an employment. The judgment of the lower court is reversed and the case dismissed.

MORRIS, Ch. J., and CHRISTIANSON, NUESSLE, and BURKE, JJ., concur.