**FIRST NATIONAL BANK IN GRAND FORKS, as Personal Representative of the Estate of Harry Gershman, deceased, and Louis Gershman, Plaintiffs and Appellants,**

v.

**PLITT NORTH CENTRAL THEATRES, INC. (formerly named Minnesota Amusement Company and ABC North Central Theatres, Inc.), a Delaware Corporation, Terry Peterson and Kathy Panzer, Defendants and Appellees.**

Civ. No. 9896.

Supreme Court of North Dakota.

May 12, 1981.

Robert A. Alphson, Grand Forks, for plaintiffs and appellants.

Degnan, McElroy, Lamb, Camrud, Maddock & Olson, Grand Forks, for defendants and appellees; argued by Gerald J. Haga, Grand Forks.

PEDERSON, Justice.

Louis Gershman and the First National Bank of Grand Forks have appealed from entry of summary judgment by the district court in favor of appellee Plitt Theatres. We reverse.

In 1966 Louis Gershman and his brother Harry entered into a 30–year lease arrangement with predecessors of Plitt. Under the lease Plitt has use of appellant's building for the purpose of screening motion pictures. Plitt in turn is obligated to pay rent along with other amounts as defined under the following lease terms:

"*Article VI, paragraph 2*:

Lessee covenants and agrees to pay to Lessor as additional rent (A) for each of the first four (4) lease years, a sum equal to ten (10%) percent of the gross admission receipts, if any, in excess of Two Hundred Thousand ($200,000.00) Dollars; and (B) for each of the remaining lease years, commencing March 1, 1972, a sum equal to ten (10%) percent of the gross admission receipts, if any, in excess of One Hundred Sixty-five Thousand ($165,000.00) Dollars."

*"Article VI, Paragraph 11:*

After the first full tax year included within the term of this lease during which the completed improvements on the demised premises herein have been fully assessed, lessee agrees to pay the lessor an amount equal to one-half (½) of the real estate taxes levied upon the demised premises but not in excess of Three Thousand ($3,000.00) Dollars during any one tax year. Any amounts paid or payable by lessee hereunder shall be deducted cumulatively from any additional rent payable to the lessor pursuant to paragraph 2 of this Article."

In 1977 the appellants sued Plitt for allegedly conspiring to keep its receipts below the level which, under Article VI, paragraph 2 of the lease, would have resulted in additional rental payments. Plitt counterclaimed, seeking return of an alleged overpayment to the appellants. Appellants' original suit was later dismissed. Plitt's motion for summary judgment on the counterclaim was granted.

Under the "additional rent" provision of the lease, *supra* (Article VI, paragraph 2), Plitt made the following payments in the years indicated:

| 1971 — | $   480.34 |
| 1972 — | $   401.52 |
| 1973 — | $5,715.49 |
| 1974 — | $ 0 |
| 1975 — | $ 0 |
| 1976 — | $ 0 |
| 1977 — | $4,521.84 |

Appellants do not dispute receipt of these amounts. In addition, in each year since 1969 Plitt has paid $3,000.00 pursuant to paragraph 11 of Article VI, *supra*.[1] Paragraph 11 states that "any amounts paid or payable by lessee hereunder shall be deducted cumulatively for any additional rent payable to the lessor pursuant to paragraph 2 of this article." After it was determined that Plitt had never used this deduction to figure the additional rent due and was therefore entitled to a refund, the district court computed the amount owing to be $11,119.19. The figure is based on constru-

ing paragraph 11, and in particular the word "cumulatively," to mean that *all* payments made pursuant to paragraph 11, from the inception of the lease, are deductible from additional rents owed pursuant to paragraph 2. Obviously paragraph 11 payments since 1969, and even from 1971, total more than the additional rent amounts listed for 1971, 1972, 1973 and 1977. The district court therefore ordered the refund of all additional rent payments for those four years, or $11,119.19.

At the hearing on the summary judgment, the district court stated:

"It's my finding that Article 6, Paragraph 2, and Article 6, Paragraph 11 of the Lease are clear and not contradictory and that their [sic] exists no genuine issue as to any material fact regarding the provisions of these conditions in the lease."

■ A determination of what the objective terms of a contract are is a finding of fact. *Tallackson Potato Co., Inc. v. MTK Potato Co.*, 278 N.W.2d 417, 422 (N.D.1979). An inference from those terms as to what effects the parties intended is a conclusion of law, except that if the intent of the parties is not deducible from the face of the contract, but is discoverable only through extrinsic evidence, the issue of intent becomes one of fact. *Tallackson, supra*, 278 N.W.2d at 422; *Metcalf v. Security Intern. Ins. Co.*, 261 N.W.2d 795, 799 (N.D.1978). Whether or not a contract, or part of it, is ambiguous is a question of law. *Thiel Industries v. Western Fire Ins. Co.*, 289 N.W.2d 786, 788 (N.D.1980). When a court holds a contract ambiguous, a factual inquiry must be conducted by the taking of extrinsic, or parol, evidence.

■ We do not agree with the district court's conclusion that the meaning of paragraph 11, in conjunction with paragraph 2, is clear on its face. The court appears to have given *prospective* operation to the word "cumulatively" in paragraph 11; that is, paragraph 11 payments, to the extent

---

1. Oral argument to this court brought out the fact that, due to the substantial tax burden on the premises, the yearly payments under paragraph 11 would always be $3,000.00.

they exceed the present additional rent obligation, are credited against subsequent additional rent payments. Yet the language of the provision does not foreclose its *retrospective* application. We can imagine a situation in which for a period of years Plitt incurs an obligation to pay additional rent even after deducting amounts paid under paragraph 11. If this period were followed by several years during which Plitt gains credit under paragraph 11 by incurring no additional rent, could Plitt ask return of earlier moneys, paid in additional rent, up to the amount of the credit? Was it intended that the accounting occur only at the end of the lease term? The language of paragraph 11 simply does not provide for when accounting(s) is to occur and, almost the same question, how and to what extent credit is to be given.

When more than one reasonable interpretation can be given a contract provision, ambiguity is present. *Thiel Industries, supra*, 289 N.W.2d at 788. We believe it is necessary, before the meaning of paragraphs 2 and 11 of Article 6 can be decided, to have extrinsic evidence as to the intent of the parties.

The judgment is reversed and the case remanded for proceedings consistent with this opinion.

ERICKSTAD, C. J., and VANDE WALLE, SAND and PAULSON, JJ., concur.