Delray L. WESTMAN, Appellant,

v.

**NORTH DAKOTA WORKERS COMPEN-
SATION BUREAU and Kedney Ware-
house Company, Appellees.**

Civ. No. 900088.

Supreme Court of North Dakota.

July 31, 1990.

Daniel E. Schwandt of Hannig Law Office, Moorhead, Minn., for appellant.

Dean J. Haas, Asst. Atty. Gen., Bismarck, for appellee North Dakota Workers Compensation Bureau.

Allen J. Flaten of Vaaler, Gillig, Warcup, Woutat, Zimney & Foster, Grand Forks, for appellee Kedney Warehouse Co.

LEVINE, Justice.

Delray Westman appeals from a district court judgment affirming the Workers Compensation Bureau's decision that he was an employee of Kedney Warehouse Company (Kedney) when he was injured and, therefore, is entitled to benefits. We affirm.

Kedney has moved to dismiss the appeal. The question presented by the motion to dismiss is whether NDCC § 65–10–01 is the exclusive source of a claimant's right to appeal or whether that section must be read in conjunction with NDCC § 28–32–15. Kedney contends that only those decisions of the Bureau specified in § 65–10–01 are appealable and that because the allowance of a claim is not a decision specified in § 65–10–01, it is unappealable. Westman and the Bureau contend that § 65–10–01 incorporates § 28–32–15 and together provide Westman with the right to appeal the Bureau decision allowing benefits and finding that he was an employee. We hold that §§ 65–10–01 and 28–32–15 must be read together and, so construed, they authorize this appeal.

Section 65–10–01, NDCC, applies to appeals to district court from decisions of the Bureau. It provides in relevant part:

"If the final action of the bureau denies the right of the claimant to participate at all in the fund ... or if the bureau allows the claimant to participate in the fund to a lesser degree than that claimed by the claimant, if such allowance is less than the maximum allowance ..., the claimant may appeal to the district court ..."

Section 65–10–01, NDCC, grants a claimant a right to appeal under the specific circumstances it addresses. It does not, either explicitly or implicitly, limit the broader appeal rights contained within NDCC § 28–32–15. Section 28–32–15 is part of the Administrative Agencies Practices Act and authorizes a right of appeal from decisions of administrative agencies. *Hammond v. North Dakota State Personnel Bd.*, 332 N.W.2d 244 (N.D.1983). Statutes relating to the same subject matter shall be construed together and should be harmonized, if possible, to give meaningful effect to each, without rendering one or the other useless. *E.g., Keyes v. Amundson*, 343 N.W.2d 78 (N.D.1983); *Hospital Services, Inc. v. Brackey*, 283 N.W.2d 174 (N.D.1979).

Section 28–32–15 provides:

"Any party to any proceeding heard by an administrative agency, except in cases where the decision of the administrative agency is declared final by any other statute, may appeal from such decision within thirty days after notice thereof has been given.... Only final orders or decisions and orders or decisions substantially affecting the rights of parties are appealable...."

By its clear expression, § 28–32–15 gives "any party" to "any" administrative proceeding the right to appeal a decision substantially affecting the appellant's rights, "except in cases where the decision is declared final by any other statute." Obviously, the Bureau is an administrative agency, *see* NDCC § 28–32–01(1), and Westman is a party. The key question is whether another statute declares final a bureau decision so as to make that decision unappealable under NDCC § 28–32–15.

Kedney argues that NDCC § 65–05–03 makes all Bureau decisions unappealable except those listed in NDCC § 65–10–01. We disagree. Section 65–05–03, NDCC, provides:

"The bureau shall have full power and authority to hear and determine all questions within its jurisdiction, and its decisions, except as provided in chapter 65–10, are final and are entitled to the same faith and credit as a judgment of a court of record."

This section means only that when decisions of the Bureau are final, and not merely interlocutory, they are entitled to full faith and credit. *See Knutson v. North Dakota Workmen's Comp. Bureau*, 120 N.W.2d 880 (N.D.1963). The statute does not render unappealable a final, non-interlocutory Bureau decision. It does not speak to appealability; it addresses only the effect of finality, which is full faith and credit. Thus, an unappealed workers compensation decision is a final decision entitled to full faith and credit. We deem it significant that when the Legislature intended a Bureau decision to be unappealable, it so specified. *E.g.*, NDCC § 65–05–04 [no appeal from a Bureau decision not to reopen a claim]. *See Lass v. North Dakota Workmen's Comp. Bureau*, 415 N.W.2d 796 (N.D.1987).

Kedney relies on *Schmidt v. North Dakota Workmen's Comp. Bureau*, 74 N.D. 520, 23 N.W.2d 26 (1946) in support of its motion to dismiss this appeal. In *Schmidt*, the North Dakota Supreme Court held that there is no appeal from the decision of the Bureau to refuse to reopen a claim for compensation for an apparently unchanged medical condition. *Schmidt* held further that § 65–0503 of the Revised Code of 1943 made appealable only those Bureau decisions listed in § 65–1001. The impetus for this holding was to avoid the effect of rendering appealable every decision of the Bureau to increase or decrease compensation.

We believe that *Schmidt* is inapposite for two reasons. First, it involved a decision by the Bureau not to reopen a claim, rather than a determination of employee status. More importantly, the statutes interpreted in *Schmidt* were significantly different than the ones we interpret today. Specifically, § 65–0503, Revised Code of 1943, did not include the operative language regarding full faith and credit.[1] It is the reference to full faith and credit in the current section NDCC § 65–05–03, that clarifies the meaning of the term "final." When "final" is linked to "full faith and credit," we understand its meaning in that context as a final decision which is not interlocutory, rather than as a decision which is not appealable. The *Schmidt* court did not have the benefit of that context. But the meaning of a word in a given sentence in a statute may be directly affected by the context in which it is used. *See, e.g., Balliet v. North Dakota Workmen's Compensation Bureau*, 297 N.W.2d 791, 795 (N.D.1980).

Nor did the *Schmidt* court have the benefit of the amendment to § 65–05–04, enacted in 1981,[2] which made unappealable decisions of the Bureau not to reopen claims for compensation for unchanged medical conditions. *See Lass v. North Dakota Workmen's Comp. Bureau*, 415 N.W.2d 796 (N.D.1987). Thus, unlike the *Schmidt* court, we are not burdened with apprehension over a construction that would countenance countless appeals, the effect of which would be to relitigate bureau decisions that ought to be res judicata. The Legislature has removed that concern by amending § 65–05–04. We, therefore, do not deem *Schmidt* to be controlling or persuasive.

Construing §§ 28–32–15 and 65–10–01 together, we hold that NDCC § 28–32–15 au-

---

1. Section 65–0503, North Dakota Revised Code of 1943, provided:

"The bureau shall have full power and authority to hear and determine all questions within its jurisdiction, and its decisions, except as otherwise provided in chapter 10 of this title, shall be final."

2. In 1981 NDCC § 65–05–04 was amended to add the provision: "There is no appeal from a bureau decision not to reopen a claim after the bureau's order on the claim has become final." 1981 N.D.S.L. ch. 643 § 3.

thorizes a claimant to appeal from a decision of the Bureau which grants benefits if that decision substantially affects the rights of the claimant. We, therefore, deny the motion to dismiss.

We turn now to the merits of the case. Westman was injured on July 8, 1988, when a truck owned by Kedney and driven by its employee, David Dessellier, went into a ditch and rolled over while en route to Minot from Grand Forks. Dessellier had asked Westman to ride with him to Minot and help unload the truck. Dessellier offered to pay Westman $25.00. Westman agreed. A written authorization was obtained from a Kedney dispatcher. It provided in part:

"This letter is to authorize Delray Westman ... to ride as a helper only with no driving privilages [sic] on any unit operated by the above identified agent [Kedney] under Allied Van Lines authority.

"This letter expires 1 year from [July 7, 1988]."

At the time of the accident, Westman was asleep in the truck cab's sleeper section. While in the hospital, Westman signed a Workers Compensation Bureau claim form.

The Bureau accepted Westman's claim and paid out more than $4,000 in benefits. In December 1988, Westman, in consultation with an attorney, sought to withdraw his claim for benefits because Westman had begun a personal injury suit against Kedney and Dessellier on November 29, 1988. The Bureau's initial order, dated January 16, 1989, found Westman to be an employee. Westman then petitioned for a hearing after which the Bureau reversed itself and determined that Westman was not an employee and that the Bureau had no jurisdiction to award benefits. Kedney then petitioned for a rehearing. On July 26, 1989, the Bureau issued its final decision, finding Westman to have been an employee of Kedney when injured and thus eligible for benefits. Westman appealed to the district court, which affirmed the Bureau. Westman then appealed to this Court.

■ Westman argues that the decision of the Bureau must be reversed because it is not in accordance with the law, its findings of fact are not supported by a preponderance of the evidence and its conclusions are not supported by its findings of fact. NDCC § 28–32–19. We must affirm findings of fact if they are supported by a preponderance of the evidence. NDCC § 28–32–19(5). In determining whether the Bureau's findings of fact are supported by a preponderance of the evidence, we do not make independent findings of fact or substitute our judgment for that of the agency. In re Prettyman, 410 N.W.2d 533 (N.D.1987). We determine only whether a reasoning mind could have determined that the factual conclusions were proved by the weight of the evidence from the entire record. Id. at 536.

Westman argues that the Bureau erred in determining that he was an employee and that his injury was compensable. The Bureau's findings of fact and conclusions of law, which are specifically attacked by Westman, are: [3]

"FINDINGS OF FACT

"VI.

"Claimant and David Dessellier entered into an agreement whereby the claimant would ride in the truck owned by Kedney Warehouse to Minot, North Dakota, to help unload a truck. Claimant was to be provided the sum of $25.00 for his services. The employment contract necessarily called for claimant to ride in the truck to and from Minot, and to help unload in Minot.

Because we determine that the Bureau's finding of the contract terms is supported by a preponderance of the evidence and further supports its conclusion that Westman's injury arose out of and in the course of his employment, we need not address Westman's challenge to Conclusion of Law V.

---

**3.** Westman also attacks the Bureau's conclusion:

"V.

"Even if claimant's employment consisted solely of helping to unload the truck in Minot, claimant's injury arose in his employer's conveyance when reporting to work, and is therefore compensable."

"XIII.

"Claimant was performing services under the contract of hire when he was riding in the employer's truck enroute to Minot.

## "CONCLUSIONS OF LAW

"IV.

"Since claimant had commenced his employment by reporting for duty, and was enroute to Minot to unload a truck, the injury he sustained [arose] out of and in the course of his employment with Kedney Warehouse."

■ Under worker's compensation law, an employee is any person "engaged in a hazardous employment under any ... contract of hire ..." NDCC § 65–01–02(14). Westman does not dispute that a contract of hire existed; he disputes only the terms of that contract which, as found by the Bureau, established that he was "engaged in" employment at the time of his injury.

The determination by the Bureau of the terms of Westman's contract of employment is a finding of fact. *First Nat'l Bank in Grand Forks v. Plitt North Central Theatres, Inc.*, 305 N.W.2d 653 (N.D. 1981). Westman says that he was employed only to unload the truck in Minot. He contends that he was not engaged in employment while simply riding in the truck en route to his destination, and, therefore, he was not an employee when he was injured. He argues that the fact that he was never paid the $25.00 Dessellier promised him supports this position. He reasons that because he did not unload the truck, he performed no work for which he should have been paid.

While it is clear that Westman did not receive the $25.00, the inferences to be drawn from that nonpayment are not as unequivocal as he urges. The evidence established that helpers, like Westman, are paid by the van drivers, in this case Dessellier, rather than by the moving and storage company. Dessellier testified that he did not pay Westman "because we never did get to the destination to complete our—our delivery." But there was also evidence that although Westman never asked for the money, Dessellier "probably would have" paid him if Westman had asked. To the extent the evidence was in conflict and gave rise to different inferences, we defer to the Bureau's resolution of those conflicts and its choice of inferences.

Westman does not dispute that he was hired as Dessellier's "helper." The evidence indicates that a helper's duties are not limited to unloading the truck, but include riding in the truck from the point of hiring to the point of destination and remaining available to perform any function the van driver may direct during the trip. Westman himself testified at one point that he was hired by Dessellier because Dessellier "needed a helper to go with him down to Minot to unload a load ... and he asked me if I'd go with him."

Westman refers us to *State ex rel. Kusie v. Weber*, 72 N.D. 705, 10 N.W.2d 741, 748 (1943), for the proposition that "the contract for hire must ripen into actual work; the employee must be engaged in work" in order for the employment relationship to exist. Whether Westman was engaged in employment at the time of his injury depends on whether his riding in the truck was part of his work. If it was, then his contract for hire had ripened into actual work at the time of the accident as required by *Weber*.

In *Weber*, the claimant, Mary Kusie, had approached the defendant about a job plucking turkeys and was told she could go to work any time she wanted to. Kusie replied that she would return after supper to commence work. She was injured as she returned to the defendant's place of business. Under the facts of that case, this Court held that a claimant who was injured on her way to defendant's place of business in order to begin work, but who had not started to work at the time of the injury, was not an employee because she was not "engaged in an employment." We explained that "the term 'engaged in an employment' means working, and one who has never worked, has never started to work, cannot be said to be engaged in employment." 10 N.W.2d at 746. There,

we relied on the principle that "in the relationship of employer and employee the contract for hire must ripen into actual work." *Id.* at 747.

We believe that *Weber* is of little assistance to Westman because the Bureau adhered to the principle articulated in *Weber* when it concluded that by "reporting for duty," Westman had commenced his employment, and that by riding in the truck, he was engaged in employment.

■ Westman also argues that he suffered no "compensable injury" as that term is defined under our workers compensation law. He asserts that his injury did not "arise out of and in the course of employment" as required by NDCC § 65–01–02(8) (Supp.1989) [previously numbered 65–01–02(7)]. We disagree.

An injury arises in the course of employment if it "occurs within the period of employment at a place where the employee may reasonably be and while he was engaged in performing the duties of his contract or is engaged in something incident thereto and contemplated thereby." *Welch v. North Dakota Workmen's Comp. Bureau,* 75 N.D. 608, 31 N.W.2d 498, 502 (1948). Here, as the Bureau reasonably found, the injury occurred after Westman's employment began while he was engaged in the work of a helper.

From the weight of the record, a reasoning mind could have determined that riding in the truck with Dessellier was a term of Westman's employment and that he was engaged in employment at the time of his injury. We conclude that the Bureau's findings of fact are supported by a preponderance of the evidence and in turn support its conclusion of law that the injury arose out of and in the course of Westman's employment with Kedney Warehouse. The decision is in accordance with the law.

We affirm.

ERICKSTAD, C.J., and VANDE WALLE, GIERKE and MESCHKE, JJ., concur.