Marvin SCHMIDT, Appellee,

v.

NORTH DAKOTA WORKERS'
COMPENSATION BUREAU,
Appellant.

Civ. No. 910318.

Supreme Court of North Dakota.

April 2, 1992.

Dean J. Haas, Asst. Atty. Gen., Bismarck, for appellant.

Steven L. Latham of Wheeler Wolf, Bismarck, for appellee.

LEVINE, Justice.

The North Dakota Workers' Compensation Bureau (the Bureau) appeals from a district court judgment reversing the Bureau's denial of home nursing care benefits to Marvin Schmidt. We affirm the district court judgment.

On November 21, 1985, Marvin suffered severe burns to fifty percent of his body, including his entire back, his arms and hands, his buttocks and legs, as well as his scalp and face. He was hospitalized until December 13, 1985.

Upon release from the hospital, Marvin required considerable home care, including special ointment and bandages for the burn areas which Marvin could not himself apply. His bed linens had to be sterilized and

changed every day. His bathing required assistance. Marvin's wife, Linda, provided this necessary help, estimated to take four and one-half hours a day, thereby eliminating the need for other assistance.

The Bureau accepted liability for Marvin's claim and paid temporary total disability benefits. On January 2, 1986, the Bureau awarded Marvin a $250–a–month home nursing care allowance to compensate Linda for her services, with review of the allowance in three months.

Marvin underwent skin grafting surgery in March of 1986, and required continued assistance at home. His bandages had to be changed several times a day. He needed help to sit up, to arise from bed and to get up from a chair. He required frequent daily sponge baths. He could not put his hands in water and was fitted with special gloves. Linda continued to assist Marvin with these daily needs. She applied the prescribed ointment and followed the Doctor's instructions in changing Marvin's bandages.

On April 9, 1986, Marvin requested the Bureau to extend his home nursing care allowance. He was fitted with a Jobst garment[1] that required two people to put on and take off and he continued to require ointment applied to the burn areas twice daily. The Bureau renewed Marvin's home nursing care allowance for no more than three months.

In a letter to the Bureau dated June 11, 1986, Dr. Gruver, Marvin's doctor, said:

"I believe that the care necessary for Mr. Schmidt at this point would be only that which a wife would normally be considered to provide for her husband. This consists of washing his pressure shirt and putting a fresh [shirt] on daily along with bandages on a couple of spots. This may have to be done twice a day but should not take more than fifteen minutes twice a day."

Based upon this personal expression, the Bureau terminated the home nursing care allowance effective June 1, 1986.

On December 15, 1987, Marvin requested the Bureau to reinstate the home nursing care allowance as of May, 1986. The Bureau denied Marvin's request. In its findings, the Bureau stated: "The Bureau has paid for home nursing care allowance through May of 1986. There is insufficient evidence that home nursing care is required to treat claimant's injury." Marvin requested a rehearing. Before the Bureau could rule on Marvin's request, it received a letter from Dr. Juhala[2] advising:

"Marvin also relates to me that his wife is helping him with daily dressing changes and with daily application of the creams and medications that are applied to his hypertrophic scars. He needs almost 1½ hours a day for the dressing changes, applications and the daily cleansing of his Jobst garments."

The letter apparently precipitated a stipulation[3] between the Bureau and Marvin. *See Ekstrom v. N.D. Workers' Comp. Bu-*

---

1. Dr. Juhala, Marvin's treating physician, described a Jobst garment as a "pressure graded elastic garment that's made by the Jobst Company." Dr. Juhala indicated that Marvin's primary treatment was compression treatment which consisted of wearing the Jobst compressive garment and using a special type of cream that keeps the garment from breaking apart and the burn scar soft.

2. In 1986, the Bureau referred Marvin to Dr. Juhala, who continues to treat him.

3. The stipulation said:
"An application for Workers Compensation benefits was filed on November 29, 1985, in connection with an alleged injury on November 21, 1985. Claimant was injured while employed as a spray painter with Melroe Company in Bismarck, North Dakota. Claim-

ant suffered extensive burns. The Bureau accepted liability and awarded benefits, including medical expenses and disability.

"The Bureau paid a home nursing allowing [sic] to claimant's wife from January of 1986 through May of 1986. The allowance was discontinued after May of 1986. Claimant subsequently requested additional home nursing allowance. By order dated February 1, 1988, the Bureau denied additional home nursing allowance. The claimant requested rehearing.

"In order to resolve the dispute between the parties regarding the claimant's entitlement to additional home nursing allowance, the parties stipulate and agree as follows:

"1. The claimant is entitled to reimbursement by the Bureau for home nursing services actually provided by claimant's wife for claimant's care related to his work injury.

*reau,* 478 N.W.2d 380 (N.D.1991). The Bureau agreed to "continue to pay the sum of One Hundred Dollars ($100.00) monthly as reimbursement to claimant for home nursing services provided by claimant's wife, so long as such services are reasonable and determined to be necessary for claimant's care."

The stipulation also provided for a re-evaluation of the need for Linda's services:

"4. It is expressly understood and agreed that the need for such services

will be re-evaluated by claimant's physician in or about July of 1988. Continued payment for home nursing services beyond the date of the re-evaluation of the need for such services by claimant's physician, will be based on the evaluation and the recommendation of claimant's physician."

The stipulation was enforced and Marvin continued to receive home nursing care benefits until May 30, 1990. Then, the Bureau denied benefits[4] because of a letter

---

"2. The Bureau will pay and the claimant will accept the sum of One Hundred Dollars ($100.00) per month from June of 1986 to the present as payment in full of the Bureau's obligation to reimburse the claimant for home nursing care provided by claimant's wife.

"3. The Bureau shall continue to pay the sum of One Hundred Dollars ($100.00) monthly as reimbursement to claimant for home nursing services provided by claimant's wife, so long as such services are reasonable and determined to be necessary for claimant's care.

"4. It is expressly understood and agreed that the need for such services will be re-evaluated by claimant's physician in or about July of 1988. Continued payment for home nursing services beyond the date of the re-evaluation of the need for such services by claimant's physician, will be based on the evaluation and the recommendation of claimant's physician.

"The parties by their signatures certify that they have read and have received a copy of this Stipulation and do hereby waive any right to rehearing and right of appeal from the terms thereof. The terms of this stipulated settlement contemplate prior application of section 65-05-09.1 to all benefit computations."

"ORDER

"The Commissioners of the Workers Compensation Bureau agree to the terms of this Stipulation;

"IT IS ORDERED That the Order Denying Home Nursing Allowance dated February 1, 1988, is in all things revoked;

"IT IS FURTHER ORDERED That payment on this claim be made in accordance with the terms of this Stipulation;

"IT IS FURTHER ORDERED That a copy of this order be served on all parties in interest, as provided by law."

4. The Bureau's order said:

"FINDINGS OF FACT

"I.

"An application for workers' compensation benefits was filed on November 29, 1985, in

connection with an alleged work injury on November 21, 1985.

"II.

"On the alleged date of injury, the claimant was employed by Melroe of Bismarck, North Dakota, as a spray painter.

"III.

"Claimant was diagnosed as having thermal burns to 50 percent of his body.

"IV.

"The Bureau accepted liability and awarded benefits, including associated medical expenses and temporary total benefits from November 20, 1985, through July 31, 1986. Claimant's disability benefits were discontinued since the claimant had returned to work on August 1, 1986, in a lower wage classification without a reduction of wages until January 1, 1988. Temporary partial benefits were paid from January 1, 1988, through October 9, 1988, since the claimant was unable to return to his pre-injury wage classification. Claimant's temporary partial disability benefits were discontinued when the claimant's wage had reached below a 10 percent differential of his present job classification and pre-injury classification, temporary partial disability benefits from October 4, 1989, through March 1, 1990, when the new law was enstated. The claimant was not earning over 90 percent of his pre-injury wage.

"V.

"The Bureau authorized a home nursing care allowance on January 2, 1986, to claimant's wife to apply ointment and dressing for the treatment of claimant's burns.

"VI.

"A final Order Denying Home Nursing Care Allowance was issued on February 1, 1988, since the claimant's care consisted of washing a shirt and putting on a bandage twice daily.

"VII.

"Claimant requested on June 26, 1986, a further home nursing allowance for his wife to assist him with the JOBST garment.

"VIII.

"A stipulation agreement was entered into on September 20, 1988, wherein the Bureau agreed to pay claimant's wife a nursing home

from Dr. Juhala, which confirmed that Marvin continued to need special care but questioned the need for payment for that care:

"Marvin Schmidt is in need of compression garments, including gloves as well as the sleeve garments that he has had. I am not 100% sure whether this will be life-long but it usually takes between 3 and 5 years of continued pressure. I believe the patient is now approaching his 3rd year.

"The question about continued care for him being rendered by his wife is a question that will be addressed. I do not think that continued care needs to be rendered at this point and that the patient is totally sufficiently able to take care of himself at this point. There may be times when his wife will need to assist him but I don't think it renders that type of payment any more."

Marvin requested a rehearing. The hearing officer heard testimony from Marvin, Linda and Dr. Juhala. Linda testified to the daily application of the cream and the washing and fitting of the Jobst garment. These tasks, she said, took over an hour each day. Dr. Juhala thought that the time for applying the ointment was excessive but he did not know the time required in washing the garment. The hearing officer found that Marvin required assistance in applying the cream and that his Jobst garments needed special washing which Linda provided and which, impliedly, Marvin could not. The hearing officer concluded that Marvin was entitled to a home nursing care allowance.

Counsel for the Bureau petitioned the Executive Director for reconsideration, stressing that only skilled care or substantial care deserved compensation. Agreeing with counsel for the Bureau, the Bureau's Executive Director issued an order denying home care benefits because the services provided were not compensable under NDCC § 65–05–07. Marvin then appealed to the district court.

The district court noted that Marvin could not reach all of the burned areas or properly place or maintain the Jobst garments. The court overruled the Bureau's conclusion that the statute allows compensation for only skilled care. Instead, services need only be "reasonable and appropriate to the nature of the injury" and the services provided by Linda were reasonable and appropriate. The court reversed the Bureau's decision and ordered the Bureau to provide the allowance from May 30, 1990. The Bureau appealed to this court.

 Generally, we review the Bureau's decision and not the decision of the district court. *Braun v. N.D. Workers' Comp. Bureau*, 472 N.W.2d 457 (N.D. 1991). However, we recognize that the district court's analysis is important and entitled to respect. *Holmgren v. N.D. Workers' Comp. Bureau*, 455 N.W.2d 200 (N.D. 1990). We will affirm the Bureau's decision unless its findings of fact are not supported by a preponderance of the evidence or its conclusions are not supported by the findings. NDCC § 28–32–19. In determining if the findings are supported by a preponderance of the evidence, we do not make independent findings of our own

allowance as long as services are reasonable and determined necessary for claimant's care.
"IX.
"Dr. Juhala indicated on March 17, 1990, that the need for the home nursing care was not warranted any longer, since claimant was able to take care of himself.
"X.
"Dr. Juhala reported that claimant's wife may need to assist the claimant, but that the payment for home care was not warranted.
"CONCLUSIONS OF LAW
"I.
"Claimant sustained an injury by accident arising out of and in the course of his employment on November 21, 1985.

"II.
"Claimant has failed to prove that he is entitled to further home nursing care allowance beyond those previously provided by the Bureau.
"ORDER
"IT IS ORDERED that further home nursing care allowance beyond those previously provided by the Bureau is in all things denied;
"IT IS FURTHER ORDERED that a copy of this order be served on all parties in interest, as provided by law."

but determine whether or not the record reflects that a reasoning mind could have determined that the factual conclusions were proven by the weight of the evidence. *Westman v. N.D. Workers' Comp. Bureau*, 459 N.W.2d 540 (N.D.1990); *Risch v. N.D. Workers' Comp. Bureau*, 447 N.W.2d 308 (N.D.1989).

The Bureau argues the care given by Linda is not skilled care and, therefore, not compensable.

Under the stipulation, home nursing care services were compensable "so long as such services are reasonable and determined to be necessary." Marvin's physician was to reevaluate the need for home nursing care services. Dr. Juhala reevaluated and confirmed the continuing need for home nursing care. He acknowledged "[t]here may be times when [Marvin's] wife will need to assist him" but opined that Linda's assistance should be gratuitous. In effect, the Doctor gave his legal opinion on compensation. There is no dispute as to his medical opinion that Marvin requires Linda's services as part of his treatment. Under the stipulation, Dr. Juhala was to reevaluate the need for services, not their compensability under workers' compensation law. Dr. Juhala's legal opinion of the duties of a wife is irrelevant in resolving the issue of whether the Bureau must compensate Linda for her services.

It is the stipulation that controls. The Bureau, in effect, promised to pay Linda so long as her services were "reasonable and determined necessary" for claimant's care. While Dr. Juhala testified, and the Bureau found, that the claimant was able to take care of himself, the Doctor also said that Marvin would need Linda's assistance. That concession confirms that Linda's services were reasonable and necessary for Marvin's continuing care.

In *Ekstrom, supra,* we reversed the trial court for ignoring or misinterpreting the effect of a stipulation entered into by the Bureau and the claimant. We explained that the Bureau was authorized to undertake a stipulation to preserve its funds and that the stipulation must not be ignored. Here, the Bureau erred in ignoring or mis-interpreting its stipulation and discontinuing home nursing care benefits. The district court judgment is therefore affirmed.

ERICKSTAD, C.J., MESCHKE, J., and HUNKE, District Judge, concur.

HUNKE, District Judge, sitting as a member of the Court to fill the vacancy created by the resignation of H.F. GIERKE III. Justice JOHNSON, not being a member of this Court at the time this case was heard, did not participate in this decision.

VANDE WALLE, Justice, concurring specially.

I agree that the stipulation between Schmidt and the Bureau governs this case pursuant to our decision in *Ekstrom v. N.D. Workers Comp. Bureau*, 478 N.W.2d 380 (N.D.1991). Nevertheless, I believe a "reasoning mind" (*see Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214 (N.D.1979)) could have determined, as did the Bureau, that Dr. Juhala was of the opinion that "the need for home nursing care was not warranted any longer, since claimant was able to take care of himself" within the terms of the stipulation.

Notwithstanding this belief, I concur in the result reached by the majority opinion. It was the responsibility of the Bureau to determine whether it was Dr. Juhala's opinion on March 17, 1990, that Schmidt had improved to a point where the type of assistance needed was nonessential or different from that needed at the time of Dr. Juhala's letter on February 10, 1988, thus expressing his medical opinion on a change in Schmidt's condition, or whether, as the majority opinion finds, Dr. Juhala was expressing his "legal opinion on compensation". *See, e.g., Matuska v. North Dakota Workers Compensation Bureau*, 482 N.W.2d 856 (N.D.1992). [Inconsistent medical opinions, not arising from leading questions on theoretical possibilities on cross examination must be explained.] Here, despite an October 31, 1990, deposition at which both the Bureau and Schmidt were represented, Dr. Juhala was not asked to compare his opinion in 1990 with

that of 1988 and to explain any discrepancies between or misunderstanding of either opinion. That is the Bureau's responsibility according to this Court's decision in *Claim of Bromley*, 304 N.W.2d 412 (N.D. 1981) as explained in *Kopp v. N.D. Workers Compensation Bureau*, 462 N.W.2d 132 (N.D.1990), and *Matuska, supra*. Those decisions effectively hold that where there are apparent discrepancies in the medical opinion of a physician which are inherent in the opinions and not created as a result of leading questions as to possible alternative causes or diagnoses on cross-examination, and which are not explained by the physician, the Bureau may not rely on the part of the opinion favorable to its position and ignore the portion that is unfavorable to its opinion, without further clarification. There was no further clarification in this instance and I therefore concur in the result reached by the majority opinion.