**Andrew J. LACY, Plaintiff and Respondent,**

v.

**Henry M. GRINSTEINNER and Don Moe Dodge, Inc., Defendants and Appellants.**

**No. 8614.**

Supreme Court of North Dakota.

Sept. 7, 1971.

Rehearing Denied Oct. 4, 1971.

Funke & Eaton, Minot, for defendant and appellant Henry M. Grinsteinner.

Thomas & Berning, Minot, for defendant and appellant Don Moe Dodge, Inc.

Pringle, Herigstad, Meschke, Loder, Mahoney & Purdy, Minot, for plaintiff and respondent.

KNUDSON, Judge.

This is an appeal from a judgment in favor of the plaintiff against the defendants in the sum of $39,320.42 for personal injuries sustained by the plaintiff in an automobile accident caused by the joint and several negligence of the defendants. The case was tried to the court without a jury and a trial de novo has been demanded.

On the morning of July 1, 1967, at about 7:50 a. m., the plaintiff Andrew J. Lacy was unloading office equipment from a station wagon parked parallel along the curb in the street in front of his employer, Copying and Visual Products Company, in Minot. Mr. Lacy was standing at the rear of the station wagon unloading office equipment when he was struck by the automobile driven by Mr. Grinsteinner. Mr. Grinsteinner had driven up with intentions to parallel park the automobile along the curb behind Mr. Lacy's station wagon. Mr. Grinsteinner was unable to stop the automobile before striking Mr. Lacy because of the failure of the brakes on the automobile he was driving. Mr. Lacy received multiple injuries.

The automobile driven by Mr. Grinsteinner was owned by Don Moe Dodge, Inc. About a week before the accident, on the 26th of June, 1967, Mr. Grinsteinner had taken his own automobile to the Don Moe Dodge, Inc., garage for repair and had received from the defendant Don Moe Dodge, Inc., a 1963 Chrysler to use while his car was being repaired. As Mr. Grinsteinner was a traveling salesman for Copying and Visual Products, it was necessary that he have an automobile for his use in the business. Mr. Grinsteinner had used the 1963 Chrysler automobile in making his calls in his territory during the week of June 25th and had returned to Minot on Friday, June 30th, in the evening, from his territory. While on his way to his territory, on or about Tuesday, June 27th, while at Devils Lake, he discovered that the emergency, or parking, brake was defective and that it did not grab or hold the car. He did not have the brakes repaired before his return to Minot.

Don Moe Dodge, Inc., is an automobile garage and agency selling Dodge automobiles in Minot. The 1963 Chrysler had been taken in by it in a trade from a previous owner. This car had approximately sixty thousand miles on it. The trial court found that the defendant, Mr. Grinsteinner, was negligent in the operation of the 1963 Chrysler in that he failed to have adequate brakes to stop and control the vehicle as required by § 39–21–32, North Dakota Century Code, or in the alternative, if the automobile had adequate brakes that the defendant Grinsteinner was negligent in failing to use the same to avoid the accident, and that this negligence was a proximate cause of the plaintiff's injury.

The trial court also found that the defendant Don Moe Dodge, Inc., was negligent in that it delivered the 1963 Chrysler automobile to the defendant, Grinsteinner, when such vehicle had been driven in excess of sixty thousand miles without the brakes having been adequately and properly tested, inspected or repaired by the defendant, Don Moe Dodge, Inc.; that the defendant, Don Moe Dodge, Inc., knew, or in the exercise of reasonable care should have known, that the brakes on the 1963 Chrysler, which had been driven in excess of sixty thousand miles, were defective and in need of repair; and that the negligence of Don Moe Dodge, Inc., in failing to inspect, discover and repair the defective brakes before lending the car to the defendant, Henry M. Grinsteinner, was a proximate cause of the plaintiff's injuries. The court further found that the plaintiff was not contributorily negligent.

We are at the outset presented a procedural matter by the plaintiff and respondent, who has argued in his brief, and orally before this Court, that the defendants Henry M. Grinsteinner and Don Moe Dodge, Inc., had not made timely

demands for trial de novo within the time for appeal and had failed to include the demand for trial de novo in the settled statement of the case, as required by § 28-27-32, N.D.C.C., nor were specifications of any facts which the appellants desired this Court to review included in the settled statement of the case. The plaintiff contends, therefore, that the review in this Court is limited to errors appearing on the face of the judgment roll.

However, the record shows that the trial court granted separate motions by each of the respective defendants to amend the record to show a demand for trial de novo by each of the defendants and for the amendment of the settled statement of the case to include therein the demand for trial de novo by each of the defendants. These motions to amend the record and for amended settled statements of the case were made after the time for appeal had expired. The record was amended accordingly, with amended settled statements of the case to include a demand for trial de novo by each of the defendants.

We do not have a motion in this case by the plaintiff and respondent to quash the settled statements of the case, which motion was present in Permann v. Knife River Coal Mining Co., 180 N.W.2d 146 (N.D.1970), wherein we granted the motion to quash the settled statement of the case, holding that

> When the party making a motion to quash a settled statement of the case presents a record that shows affirmatively that the evidence adduced in support of a motion to extend the time for settlement of the statement of the case was insufficient as a matter of law to constitute a showing of good cause, the trial court abused its discretion in finding that good cause did exist. * * *

■ The record in this case is incomplete as to the evidence adduced in support of the motions for amendment of the record to show a demand for trial de novo and for amended settled statements of the case to include a demand for trial de novo, and in the absence of a record showing that good cause was not established, the presumption arises that the trial court found that the evidence submitted to it was sufficient to show that good cause existed. Verry v. Murphy, 163 N.W. 2d 721 (N.D.1968).

■ We have held that a motion to settle the statement of the case after time allowed by law has expired is addressed to the sound judicial discretion of the trial court, and its decision will not be disturbed unless the record clearly shows that it abused its discretion. Verry v. Murphy, *supra;* Zarak v. Hjelle, 154 N.W. 2d 377 (N.D.1967); Kline v. Landeis, 147 N.W.2d 897 (N.D.1966).

We also said in Zarak v. Hjelle, *supra,* that the determination of whether good cause has been shown is for the trial court to make, and, unless a decision of the trial court indicates an abuse of discretion, it will not be reversed on appeal.

In Permann v. Knife River Coal Mining Co., *supra,* we said that the burden is upon the party making the motion to quash a settled statement of the case to present a record showing affirmatively (1) that the evidence adduced was insufficient as a matter of law to constitute a showing of good cause; and (2) that the trial court abused its discretion in finding that good cause did, in fact, exist to justify its order granting appellant an extension of time within which to perfect the record upon appeal after the time allowed by law had expired. In the present case the plaintiff and respondent has not made any motion to quash the settled statement of the case nor has he presented a record showing affirmatively the above requirements to support a motion to quash or in support of his argument in his brief.

■ We, therefore, find that the trial court did not abuse its discretion in grant-

ing the motions of the defendants for the amendment of the record to show a demand for trial de novo by each, and for an amended settled statement of the case by each to include therein the demand for trial de novo by each.

Each of the defendants having demanded a trial de novo, which demands are included in the settled statement of the case, this Court must try the case anew and determine the facts for itself from the entire record, giving appreciable weight to the trial court's findings. Knauss v. Miles Homes, 173 N.W.2d 896 (N.D.1969).

Mr. Grinsteinner was a traveling salesman employed by Copying and Visual Products Company, with his territory in the eastern part of North Dakota, with the western boundary thereof at Lakota, about one hundred fifty miles east of Minot, the home place of business of Copying and Visual Products. Mr. Grinsteinner, on Friday evening, June 30, as was his custom at the end of the week, returned to his home in Minot from his territory.

He stayed overnight at his home, and the next morning, Saturday, July 1, he drove in the 1963 Chrysler automobile to the place of business of his employer, Copying and Visual Products, for the purpose of billing out sales made on his trip and to attend a regular sales meeting scheduled to be held that morning at the office of Copying and Visual Products.

Some time prior to June 30, Mr. Grinsteinner, with other employees of Copying and Visual Products, had organized a separate corporation, Mr. Music Man, Inc., with headquarters to be at Fargo, North Dakota. Mr. Grinsteinner was to terminate his employment with Copying and Visual Products on June 30 and go on the payroll of Mr. Music Man on July 1.

Mr. Grinsteinner remained in the service of Copying and Visual Products and under the supervision of the manager of Copying and Visual Products for several days after July 1, and did not commence actual work with Mr. Music Man until July 10, although his first paycheck from Mr. Music Man covered the period from July 1 to July 15, both inclusive, and the last paycheck from Copying and Visual Products covered the period ending June 30.

Mr. Grinsteinner and his family moved from Minot to Grand Forks the weekend following the 4th of July, on July 8, 1967.

We will consider next the claim of Mr. Grinsteinner that he and Mr. Lacy were employed by the same employer at the time of the accident, and therefore Mr. Lacy's action was barred by § 65-01-08, N.D.C.C., which provides that an employee shall have no right of action against a fellow employee for damages for injuries caused by the negligence of a fellow employee, in the following language:

Where a local or out of state employer has secured the payment of compensation to his employees by contributing premiums to the fund, the employee, and the parents of a minor employee, or the representatives and beneficiaries of either, shall have no right of action against such contributing employer or against any agent, servant, or other employee of such employer for damages for personal injuries, but shall look solely to the fund for compensation.

The plaintiff, Mr. Lacy, on the other hand, contends that Mr. Grinsteinner had terminated his employment with Copying and Visual Products on June 30, the day before the accident, and that on July 1, the day of the accident, Mr. Grinsteinner was in the employ of a new employer, Mr. Music Man, and therefore they were not fellow employees at the time of the accident. Consequently, his action against Mr. Grinsteinner was not barred by the statute.

Mr. Grinsteinner asserts that at the time of the accident (1) he was an employee of Copying and Visual Products, (2) he was acting "in the course of employment" as an employee of Copying and Visual Products

as a traveling salesman, and (3) as he and Mr. Lacy were fellow employees he was immune from suit under the statute.

It is conceded that Mr. Lacy was an employee of Copying and Visual Products and was acting in the course of employment at that time. The issue here is, was Mr. Grinsteinner an employee of Copying and Visual Products and acting in the course of employment at that time? If he was not, then he was not a fellow employee, and § 65–01–08, N.D.C.C., did not operate as a bar to Mr. Lacy's action against Mr. Grinsteinner. However, if he was, then he was a fellow employee and § 65–01–08, N.D.C.C., did operate as a bar to Mr. Lacy's action against Mr. Grinsteinner.

Mr. Grinsteinner had been employed as a traveling salesman by Copying and Visual Products for some time prior to July 1. Did his employment with Copying and Visual Products, which was to be terminated as of June 30, continue to July 1 although his new employment with Mr. Music Man was to commence on July 1, the date of the accident? It appears from the testimony that Mr. Grinsteinner continued to work for Copying and Visual Products for several days after June 30, under the direction and control of the manager of Copying and Visual Products, and was doing work for and under the control of Copying and Visual Products on Saturday, July 1. In this case, Mr. Grinsteinner was on his way to the place of business of Copying and Visual Products to bill out the sales made on his trip and to attend a sales meeting at which he was required to be present.

The issue centers around whether Mr. Grinsteinner was engaged in the employment of Copying and Visual Products within the meaning of the compensation law.

The term "employee" must be held to have the meaning set forth in the statute, § 65–01–02, subparagraph 5, of the Workmen's Compensation Act, which reads:

"Employee" shall mean every person engaged in a hazardous employment under any appointment, contract of hire, or apprenticeship, express or implied, oral or written. * * *

This Court said in State ex rel. Kusie v. Weber, 72 N.D. 705, 10 N.W.2d 741, 745, 747:

A large majority of the cases dealing with "engaged in employment" so far as compensation laws are concerned, deal with situations where the worker is injured in coming to or departing from work. Because he is not working for his employer it is said he is not engaged in employment, except in such variations as riding to work in a conveyance furnished by the employer for such purpose and other special situations.

\* \* \* \* \* \*

That "engaged in employment" means having been put to work seems to be clearly expressed in Marshall Field & Co. v. Industrial Commission, 285 Ill. 333, 120 N.E. 773, 774. * * * [I]n the relationship of employer and employee the contract for hire must ripen into actual work; the employee must be engaged in work. Work having been begun, the person having been put to work, or started work for the employer, the relationship was complete and such person thereafter would be considered an employee as long as the relationship remained.

Here Mr. Grinsteinner had fulfilled these requirements to establish that he was an employee of Copying and Visual Products at the time of the accident.

But, the question arises whether Mr. Grinsteinner was acting in the course of employment with Copying and Visual Products during the time he was going from his home to the place of business of his employer on the public streets, after he had returned to his home the previous evening from his sales territory.

██ Generally, an employee going to and from his work off the premises of his employer in a public street is not engaged in the course of his employment, and an injury to an employee resulting from an accident in the public street is not compensable. Pillen v. Workmen's Compensation Bureau, 60 N.D. 465, 235 N.W. 354 (1931).

██ This general rule is subject to certain classes of exceptions, including traveling salesmen where the employment requires the employee to travel on the highway.

This Court, in Pillen v. Workmen's Compensation Bureau, *supra*, at page 360, summarized these exceptions and stated them as follows, wherein this Court recognized the exception of traveling salesmen to the general rules:

It is clear from the great weight of the authorities that an injury to an employee going to and from his work is not in the course of his employment, *unless the employment requires the employee to travel upon the highway*, as in the case of a traveling salesman. * * * Fourth, where the employee is using the highway in doing something incidental to his employment, with the knowledge and approval of the employer. [Emphasis added.]

Was Mr. Grinsteinner acting in the course of his employment at the time of the accident to come within any of these exceptions?

Mr. Grinsteinner was a traveling salesman who had returned the previous evening from his sales territory to his home, where he stayed overnight, and he was on his way in a public street to the place of business of Copying and Visual Products to report and bill out sales made during the previous week and to attend a sales meeting as required as part of his duty of employment, when the accident happened.

In 99 C.J.S. Workmen's Compensation § 231, p. 799 (1958), the text writer said:

* * * it has been declared an accepted rule that a traveling salesman is regarded as acting in the course of his employment as long as he is traveling in the interest of his employer's business, including the whole period of time between his starting from, and returning to, his place of business or home.

In 58 Am.Jur., Workmen's Compensation, § 225, p. 730 (1948), it is said:

The course of employment of a traveling salesman, for the purposes of workmen's compensation, covers both the time and the place of the traveling as well as of the selling of goods.

In M. E. Badon Refrigeration Co. v. Badon, 231 Miss. 113, 95 So.2d 114 (1957), it was held that a traveling salesman who was killed on his way home to spend the night with his family and who on the following day was to return to the office of his employer for further duties with his employer, was held to be engaged in the course of his employment.

In Rafferty v. Dairymen's League Co-op. Ass'n, 16 N.J.Misc. 363, 200 A. 493 (1938), where a sales supervisor was injured on the way to his home after attending a banquet with other members of the sales force where customers were being entertained, the court said that traveling salesmen are regarded as acting in the course of their employment as long as they are traveling in the interest of the employer's business, including the whole period of time between their starting from and returning to their place of business or home.

Frank Lyon Co. v. Oats, 225 Ark. 682, 284 S.W.2d 637 (1955), presents a similar factual situation to the present case. There the employee was employed by the Lyon Co. as a traveling salesman, with his territory in western Arkansas and eastern Oklahoma. The eastern boundary of his territory was about forty miles west of the town of Perry, where he lived, and approximately ninety miles west of Little Rock, the headquarters of his employer. The employee would leave Perry Monday morning,

work in the territory until Friday evening, and then return to Perry Friday night. On Saturday morning he was required to go to Little Rock to attend a sales meeting at the Lyon Co. The employee was injured in an automobile accident on Saturday afternoon when he was returning from the sales meeting at Little Rock to Perry. The court found that he was injured while in the course of his employment. The court said that he was regularly required by his company to go to Little Rock for a sales meeting each Saturday morning; that the trip was part of his duty. It was while he was returning from Little Rock to his assigned territory, and on no deviation whatsoever, that he received his injuries.

In Whalen v. Buchman, 200 Minn. 171, 273 N.W. 678 (1937), a door-to-door salesman returned home from her sales route to eat supper, and after supper was injured in the street on the way to her employer's office to attend a sales meeting as required as part of the duty of employment, it was held that such injury was in the course of the employment. The court said that when an employee is engaged in the performance of the service in the place where his presence is required and during the hours of service, and an accidental injury is sustained, it can be found that such injury arose in and out of the course of employment. This was a trip required of her each Monday evening; it was part of her employment. The office of her employer, to which she was on the way when injured, was not the place where her canvassing work was done, still it was the place where her presence was required. The court said there is justification for considering them a unit, that is the actual canvassing for customers and the trips to the office for instruction, so that she was engaged in her work for her employer when going to and from the office, as well as when traveling on her territory seeking customers.

In Harvey v. Bakers' & Consumers' Compressed Yeast Co., 244 App.Div. 838, 279 N.Y.S. 511 (1935), the death of a salesman who took merchandise from the office of his employer to his home at night, and who was to deliver the merchandise before reporting to the office, and who was killed in the morning en route to the office, was held compensable as occurring in the course of employment.

In Raimone v. Fligelman, 245 App.Div. 780, 280 N.Y.S. 928 (1935), an injury sustained by a painter who had been working away from his employer's plant, who had finished one job and had gone to take tools home and to get some brushes for the next job, who while at home also had lunch and then started for the second job, and who was injured on his way, his injury was held compensable as arising out of and in the course of employment.

In Gibb v. Highway G.M.C. Sales & Service Corp., 178 Neb. 127, 132 N.W.2d 297 (1964), it was held that an employee who was authorized to travel in the performance of his duties and was expected to be available at all hours for performance of his employer's business, and who had deviated from employment at a specified town but had returned to that town, and was injured while proceeding to another town to obtain lodging for the night during the business trip, was in the scope of employment within the compensation law when the accident occurred, and the accident was compensable.

In Welch v. North Dakota Workmen's Compensation Bureau, 75 N.D. 608, 31 N.W.2d 498 (1948), the employee was employed by the State Highway Department cutting weeds along the highway, using a mower drawn by a team of horses, which mower and team of horses were owned by the employee, for which he was paid an hourly wage for his services, and an additional sum per hour for the use of the mower and team. He was authorized by his foreman to repair the mower whenever it broke down and that he could make such repairs on the Highway Department's time. On the day of the accident he took the mower to the blacksmith shop to have it repaired and ran across the street to get

some tires for the mower, and also to the postoffice for the purpose of getting some daily report cards from the Highway Department that had been mailed to him, and while crossing the street from the postoffice on his return to the blacksmith shop he was struck by an automobile and sustained the injury complained of. This Court held that his injuries were compensable as arising in the course of employment. This Court said, at syllabus paragraph 1, " 'in the course of employment' means in the course of the work that the employee is hired to do or in the performance of that which is incident to the work."

And in syllabus paragraph 2 of *Welch, supra,* the Court said:

In determining whether or not an accident has occurred in the course of employment the contract of employment must be considered. If the injury occurs within the period of employment at a place where the employee may reasonably be and while he is engaged in performing the duties of his contract of employment or is engaged in something incident thereto and contemplated thereby, the injury arises in the course of his employment and is compensable.

In this case, at the time of the accident Mr. Grinsteinner was at a place where the employee may reasonably be; was engaged in performing the duties of his contract of employment; and was engaged in the performance of work incident to the employment; and we determine that at the time of the accident on July 1 Mr. Grinsteinner was an employee of Copying and Visual Products and was acting in the course of employment.

Therefore, the action of Mr. Lacy against Mr. Grinsteinner is barred by § 65–01–08, N.D.C.C.

We now come to the question whether Don Moe Dodge was negligent in failing to furnish Mr. Grinsteinner with an automobile that was in good and safe operating condition. It is contended that Don Moe Dodge had not inspected the 1963 Chrysler before it was delivered to Mr. Grinsteinner to determine whether or not the 1963 Chrysler was in good and safe operating condition, it having over sixty thousand miles registered on its odometer.

Our statute, § 39–21–32, N.D.C.C., provides that every motor vehicle shall be provided with adequate brakes, with two separate means of applying the brakes, in the following language:

Every motor vehicle, other than a motorcycle or motor-driven cycle, when operated upon a highway shall be equipped with brakes adequate to control the movement of and to stop and hold such vehicle, including two separate means of applying the brakes, each of which means shall be effective to apply the brakes to at least two wheels. If these two separate means of applying the brakes are connected in any way, they shall be so constructed that failure of any one part of the operating mechanism shall not leave the motor vehicle without brakes on at least two wheels.

■■ A violation of a statute requiring that every motor vehicle shall be equipped with brakes adequate to control the movement and to stop and hold such vehicle is only evidence of negligence. Evidence of the violation of a statutory rule relating to safety on the highways is not negligence as a matter of law, but is evidence of negligence. Glatt v. Feist, 156 N.W.2d 819 (N.D.1968).

8 Am.Jur.2d, Automobiles and Highway Traffic, § 666 (1963), reads as follows:

Where a statute requires a motor vehicle to be kept in proper or safe condition by being equipped with a braking mechanism capable of stopping or holding the vehicle according to certain standards, the bailor, as owner of such vehicle, may be held liable irrespective of his common-law duty as a bailor, to a bailee or other person injured because of the failure of such vehicle to meet the

standard required by the statute. For example, one who permits another to use his motor vehicle upon the public highways when it is not equipped with brakes sufficient to control the vehicle at all times, as required by statute, is guilty of negligence for which he may be held liable, at least where he knows, or through the exercise of ordinary diligence should have known of the defective condition.

It would appear that, therefore, it is not necessary to determine whether or not this was a bailment for hire or one of mutual benefit, or a gratuitous bailment. The bailor, as owner of such vehicle, may be held liable irrespective of his common law duty as a bailor, to a bailee or other person injured because of the failure of such vehicle to meet the standard required by the statute.

And in § 665 of 8 Am.Jur.2d, on page 218, it is said:

Insofar as liability to persons other than the bailee is concerned, some courts have taken the view that while one who drives a motor vehicle as a bailee after learning of its defective condition is himself negligent, such intervening negligence will not break the causal connection arising from the original negligence of the bailor in permitting a vehicle in such defective condition to be driven by another upon the highways. Others hold that where the bailee, although aware of the defective condition, continues to operate the vehicle for an appreciable length of time thereafter prior to the mishap to serve his own interests, there is intervening negligence which will break the causal connection. It has been said that the injured third person stands in no better position than the bailee of the vehicle.

For reasons hereafter stated, we need not here decide whether Mr. Grinsteinner's conduct in continuing to drive the car after discovering the defective condition of the emergency brake constituted a break in the causal connection.

As this case is before us on appeal for trial de novo, we must determine the facts from the record as the trier of facts, giving appreciable weight to the trial court's findings.

The evidence in respect to the alleged defective condition of the brakes is not in conflict, except as to the condition of the emergency brake. The 1963 Chrysler was equipped with two braking systems which are operated separately: one, the emergency brake; and the other, the foot brake. The emergency brake system is a mechanical system, and the foot brake system is a hydraulic system.

Mr. Grinsteinner was a traveling salesman and used the automobile in his work. He left Minot, driving the automobile to Devils Lake, a distance of about 125 miles. He testified that while at Devils Lake he discovered the emergency brake did not work. However, he continued to drive the automobile during the entire week in his business, calling on customers, without having the emergency brake repaired, nor did he inform Don Moe Dodge of its defective condition.

After the accident on Saturday morning, July 1, the automobile was returned from the scene of the accident to the Don Moe Dodge shop by a mechanic employed by Don Moe Dodge. The mechanic testified that he checked the foot brake and found that it did not work, but upon finding the emergency brake to be in working order he drove the automobile back to the shop, instead of using the wrecker to tow it back to the shop. Upon the return trip he used the emergency brake once or twice in making the necessary stops. We need not resolve the conflict in the testimony of Mr. Grinsteinner that he discovered that the emergency brake did not work upon arriving at Devils Lake and the testimony of the mechanic, who testified that the emergency brake was in working order after the accident.

There is no evidence that the foot brakes, which were of the hydraulic

type, were not in working condition when Mr. Grinsteinner received the automobile from Don Moe Dodge on Monday morning of that week. This fact is not in dispute. Mr. Grinsteinner drove the automobile during the week a distance of between five and six hundred miles and the foot brakes worked all of that time, until the morning when the accident occurred.

The automobile had 60,000 miles on it, but the record indicates that new brake linings had been installed in the front wheels by the former owner at approximately 5,000 miles before the time of the accident. The evidence also establishes that the wheel brake cylinder failed suddenly, and that there was not a gradual leaking. It was not detected until the moment when Grinsteinner was driving the automobile toward the station wagon, preparatory to parking behind it. No reason is given for the breaking of the seal.

The salesman who had taken the 1963 Chrysler as a trade-in had driven it from Ryder to Minot, a distance of thirty-five miles, and gave it what is known as a road test, and found that the foot brakes were in working order. He did not use the emergency brake. There is no other testimony of an inspection having been made by Don Moe Dodge of the two braking systems before it was delivered to Mr. Grinsteinner. Mr. Opp, a mechanic employed by Don Moe Dodge, testified that in his opinion it would not have been possible to discover any wear on the wheel brake cylinder unless it was completely dismantled. There is no evidence presented by Don Moe Dodge that an inspection of this automobile would have disclosed that the brakes were defective, or that such inspection would cause a reasonably prudent person to believe that there was a defective seal.

Our review of the record causes us to conclude that the plaintiff has failed to sustain his burden of proving that Don Moe Dodge knew, or through the exercise of ordinary care should have known, that the braking mechanism of the car was defective.

Although a bailor may be liable for the injury of a third person as a result of the operation of its bailee of its defective automobile, the bailor cannot ordinarily be held liable for defects which arise after the delivery of the vehicle to the bailee. 8 Am. Jur.2d, Automobile and Highway Traffic, § 662; 46 A.L.R.2d 423, § 8.

For the reasons stated herein we hold that the judgment must be reversed.

STRUTZ, C. J., and ERICKSTAD, PAULSON, and TEIGEN, JJ., concur.