**Karen SLAUBAUGH, Plaintiff and Appellant,**

v.

**Wilmer L. SLAUBAUGH, Defendant and Appellee,**

**The Columbus Club, Rugby, North Dakota, a North Dakota non-profit corporation a/k/a Columbus Club—Knights of Columbus, Louis V. Byron and Eileen E. Byron, a partnership, d/b/a Byron Construction, Defendants,**

**and**

**Wold Engineering, P.C., a North Dakota professional corporation, and Pierce County, North Dakota, Defendants and Appellees.**

**Civ. No. 890328.**

Supreme Court of North Dakota.

Feb. 21, 1991.

William P. Zuger (argued), of Zuger Law Offices, Bismarck, and John C. Skowronek (appearance), of Lamont, Skowronek & Dobrovolny, Minot, for plaintiff and appellant. Appearance by Rick Volk, third-year law student.

Donald L. Peterson (argued), of McGee, Hankla, Backes & Wheeler, Ltd., Minot, for defendant and appellee Wilmer L. Slaubaugh.

Gary H. Lee (argued), of Olson, Sturdevant & Burns, Minot, for defendant and appellee Wold Engineering, P.C. Appearance by Joseph Aas, third-year law student.

Steven A. Storslee (argued), of Fleck, Mather & Strutz, Bismarck, for defendant and appellee Pierce County.

MESCHKE, Justice.

Karen Slaubaugh appealed from a judgment upon a jury verdict awarding her damages against her husband, Wilmer Slaubaugh, for injuries that she received in a one-vehicle accident, but dismissing her claims against Wold Engineering, P.C. ["Wold"] and Pierce County ["County"].

We reverse the judgment and remand for a new trial.

The County improved various roads in the Rugby area during 1985. Wold was the engineer on the project, and Byron Construction ["Byron"] was the contractor. The construction was substantially completed before freeze-up, but some items remained to be finished the following spring. Although the roads remained open to the traveling public throughout the construction period, there were no traffic control or warning signs placed on the roads in question.

In the early morning hours of April 13, 1986, Wilmer and Karen were returning home from a wedding dance held at the Columbus Club, owned by the Knights of Columbus, in Rugby. Wilmer was driving, Karen was in the front passenger seat, and Wilmer's stepbrother, Johnny Slaubaugh, was in the back seat. Wilmer and Karen had been drinking, and they were arguing as they proceeded out of Rugby through the area of construction.

Traveling at a rate in excess of the speed limit, Wilmer drove through an unmarked "T" intersection. The vehicle sped through the intersection, became airborne, and hit a railroad embankment that ran parallel to the crossroad. Karen suffered severe and permanent injuries.

Wilmer's blood alcohol level was .21 at the time of the accident. Karen admitted that she was also intoxicated. In addition, police found marijuana in Wilmer's pants pocket and found marijuana and related paraphernalia in Karen's purse. Blood and urine samples from Wilmer tested negative for use of marijuana. No drug tests were performed on Karen.

Karen sued Wilmer, the County, Wold, Byron, and the Knights of Columbus. The complaint sought damages against all defendants based upon negligence, and an additional dram shop claim was asserted against the Knights of Columbus. Karen sought punitive damages from Wold, Byron, and the County.

The trial court granted a motion for partial summary judgment dismissing the claim for punitive damages. Karen dismissed her claims against the Knights of Columbus before trial, and the claims against Byron were dismissed with Karen's consent during trial.

The remaining claims went to the jury. The jury found that Karen and Wilmer were negligent, and that the County and Wold were not negligent. The jury apportioned negligence 40 percent to Karen and 60 percent to Wilmer. The jury found damages of $34,000 for past medical expenses; $80,000 for future medical expenses; $14,000 for lost wages; $20,000 for lost future wages; and $75,000 for permanent disability. The jury awarded nothing for pain, discomfort, and mental anguish. Judgment was entered upon the jury verdict. Karen appealed.

## I. JURY VERDICT

■ Karen raises numerous questions on appeal, but the unifying theme in her arguments is that multiple errors combined in a jury verdict that was contrary to the evidence presented at trial.

■ Ordinarily, a jury's special verdict will be upheld on appeal whenever possible, and will be set aside only if perverse and clearly contrary to the evidence. *Binstock v. Fort Yates Public School District No. 4*, 463 N.W.2d 837, 839 (N.D.1990); *Grenz v. Kelsch*, 436 N.W.2d 552, 553 (N.D.1989). This court will generally interfere with a jury's award of damages only if it is so excessive or inadequate as to be without support in the evidence. *Stoner v. Nash Finch, Inc.*, 446 N.W.2d 747, 753 (N.D. 1989); *Massey–Ferguson Credit Corp. v. Orr*, 420 N.W.2d 1, 2 (N.D.1988). Our review of the record here leads to the conclusion that various aspects of this jury verdict are clearly contrary to the evidence.

Perhaps the most striking inadequacy in the verdict is the award of $34,000 for Karen's past medical expenses. The parties had stipulated that Karen's past medical expenses were $68,488.51. There has been nothing presented to suggest that this stipulated amount did not represent Karen's reasonable and necessary medical expenses proximately caused by the accident.

The jury's award of less than half the stipulated amount is a clear indication that the jury's decision was influenced by factors outside the evidence. As we discuss in later parts of this opinion, the jury may have been misled by the trial court's instructions or may have been influenced by the defendants' overemphasis on Karen's possession of marijuana. Whatever the reason, we conclude that the award of less than one-half of Karen's stipulated medical expenses is without support in the evidence.

■ The jury awarded Karen nothing for past or future pain, discomfort, and mental anguish. The determination of damages for pain, suffering, and mental anguish is not "susceptible of arithmetical calculation," but is largely dependent upon the "common knowledge, good sense and practical judgment of the jury." *Stoner v. Nash Finch, Inc.,* 446 N.W.2d at 753. Thus, the determination of those damages rests largely within the sound discretion of the jury. *Id.* This is not to say, however, that the jury has absolute, unfettered discretion in setting damages for pain, suffering, mental anguish, and similar injuries. Rather, these standards suggest that in each case there is an allowable range within which the jury is free to assess damages as it sees fit. Just as a reviewing court, trial or appellate, may disturb the verdict when the jury's assessment of damages for pain, suffering, and mental anguish exceeds the outside limits of the range supported by the evidence, [*see, e.g., Nelson v. Trinity Medical Center,* 419 N.W.2d 886, 893–894 (N.D.1988)], so too may a reviewing court overturn a verdict which is so inadequate as to be without support in the evidence. *See Stoner v. Nash Finch, Inc.,*

446 N.W.2d at 753. This verdict was inadequate on pain, discomfort, and mental anguish.

The evidence established that Karen sustained devastating and permanent injuries. She suffered two crushed vertebrae and spinal cord injuries with a complete and permanent loss of bladder and bowel function, and loss of all sensation in her sexual organs. She has had extensive orthopedic surgery, including placement of steel rods and wires in her back. She also suffered a broken leg and damage to her right shoulder socket. Karen was twenty-three years old at the time of her injuries, but she will never regain bladder control, bowel control, or sexual sensation. Despite the obvious pain and mental anguish of her injuries, the jury awarded her no damages for pain, discomfort, or mental anguish. This failure to award any amount whatsoever for pain, discomfort, and mental anguish, given the severity and extent of Karen's injuries, shocks our judicial conscience. *See Olmstead v. First Interstate Bank,* 449 N.W.2d 804, 807 (N.D.1989); *Hopkins v. McBane,* 427 N.W.2d 85, 95 (N.D.1988). We conclude that the jury's award falls outside the boundaries of the acceptable range supported by the evidence.[1]

Another aspect of the jury verdict is disturbing. The special verdict separated the question of the County's liability into two parts. The first part asked whether the County was negligent. The second part asked whether the County's negligence, if any, was a proximate cause of the accident. The jury answered the first part "no," finding no breach of duty by the County, and accordingly not reaching the question of proximate cause.

---

**1.** *Grenz v. Kelsch,* 436 N.W.2d 552 (N.D.1989), cited by the County and Wold, is distinguishable. The question in *Grenz* was whether a jury verdict awarding damages for future loss of productive time but awarding nothing for permanent disability or future pain, discomfort, and mental anguish was inconsistent. We held that, under the settled jury instructions, it was not illogical to award future loss of productive time while awarding nothing for permanent disability or future pain, discomfort, and mental anguish. In *Grenz,* the jury did award damages for *past* pain, discomfort, and mental anguish.

By nature, damages for future pain, discomfort, and mental anguish are more speculative than damages for past pain, discomfort, and mental anguish. Additionally, we observe that the injuries suffered by Grenz differed greatly in degree and extent from the injuries suffered by Karen here. While it was entirely consistent with the evidence in *Grenz* for the jury to find no damages for future pain, discomfort, and mental anguish, the jury's failure to award Karen any amount for either past or future pain, discomfort, or mental anguish is without support in the evidence.

It is difficult to reconcile the jury's verdict with the evidence. There is really no contention that the County did not have a duty to provide appropriate warning signs at the intersection, and the trial court instructed the jury that that was the County's responsibility under North Dakota law. Furthermore, the evidence demonstrates that warning signs of some type were required by the Uniform Manual on Traffic Control Devices, adopted by the State Highway Department, and that the County had been advised by the State Highway Department supervisor overseeing the project and by the engineer to place warning signs at this intersection. The County nevertheless failed to place any warning signs at the intersection.

■ The County's defense to liability, both at trial and on appeal, has been premised upon lack of causation. Essentially, the County argues that Wilmer was so drunk and traveling so fast that warning signs would not have prevented the accident. This is a causation argument, and does not go to duty or breach. A driver's intoxication does not relieve the County of its duty to provide a safe roadway. A venerable maxim tells us: "A drunken man is as much entitled to a safe street, as a sober one, and much more in need of it." *Robinson v. Pioche, Bayerque & Co.*, 5 Cal. 460, 461 (1855). Wilmer's intoxication does not automatically relieve the County of liability; rather, it is simply one factor to be weighed in the causation equation.

While the evidence might have supported a finding that the County's failure to place warning signs was not a proximate cause of the accident, the jury never got to that question because it determined that there had been no negligence by the County. This determination is contrary to the evidence presented at trial.

■ The defendants have urged that, if reversal and a new trial are required, any new trial should be limited to those questions specifically affected by the errors. However, where the jury renders a verdict that is without support in the evidence on more than one finding, there is a strong inference that the jury has been influenced by passion, prejudice, or other outside forces. *See Scientific Application, Inc. v. Delkamp*, 303 N.W.2d 71, 78 (N.D.1981); *see also Irgens v. Mobil Oil Corp.*, 442 N.W.2d 223, 228 (N.D.1989). Here, as we discuss later, the jury's perverse answers may well be the result of unfair posturing of the case by the trial court, and the jury's other findings may well have been similarly tainted. Under these unusual and compelling circumstances, we conclude that a new trial on all questions is warranted.[2]

We go on to address other questions that are likely to recur upon retrial.

## II. MARIJUANA

■ Karen asserts that the trial court erred in admitting evidence of her possession of marijuana and related paraphernalia on the night of the accident. She asserts that this evidence was not relevant and, even if relevant, its probative value was outweighed by its prejudicial impact.

Relevancy is defined in NDREv 401:

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Evidence is relevant if it "would reasonably and actually tend to prove or disprove any matter of fact in issue." *Shark v. Thompson*, 373 N.W.2d 859, 865 (N.D.1985). The initial determination of relevancy of proffered evidence lies within the sound discretion of the trial court. *State v. Haugen*, 448 N.W.2d 191, 195 (N.D.1989). These standards guide our analysis of this argument.

Our review of the trial court's determination of relevancy would ordinarily be governed by the abuse of discretion standard. *See State v. Haugen*, 448 N.W.2d at 195. Yet, Karen argues that this challenged evi-

2. Our disposition of this appeal does not affect the dismissal of the Knights of Columbus and Byron from the case.

dence was irrelevant as a matter of law. She asserts that the evidence of her possession of marijuana and related paraphernalia was not relevant to any disputed fact and served only to prejudice and inflame the jury. We disagree.

Her possession of marijuana and paraphernalia was circumstantial evidence from which the jury could infer that Karen ingested marijuana, as well as alcohol, on the night of the accident. *See State v. Loyland,* 149 N.W.2d 713, 728–730 (N.D.1967) (presence of open beer cans in vehicle was relevant circumstantial evidence from which jury could infer driver had operated vehicle without due caution); *State v. St. Croix,* 79 N.D. 269, 271–272, 55 N.W.2d 635, 636–637 (N.D.1952) (presence of half-empty whiskey bottle in vehicle was relevant circumstantial evidence of driver's intoxication). Although Karen was not the driver, the extent of Karen's intoxication was relevant to at least two issues. First, Karen's use of marijuana that night might have affected her judgment, particularly her ability to assess the level of Wilmer's intoxication and his ability to drive. Second, Karen's use of marijuana could be considered in evaluating her testimony about the events preceding the accident, because it may have adversely affected her ability to perceive and recall those events. The evidence had some relevancy.

■ Karen argues that NDREv 609 would prohibit use of a conviction for possession of marijuana to impeach her credibility, so evidence short of a conviction should not be allowed to impeach. Rule 609 is wholly inapplicable to this situation. That Rule governs impeachment of a witness's general credibility through evidence of conviction of a prior unrelated crime. The evidence in this case was not offered to attack Karen's credibility in general, but rather to demonstrate that her perception of, and her ability to recall, the events preceding the accident may have been impaired by her use of marijuana. Rule 609 does not prohibit use of directly related evidence that bears upon a witness's testimonial ability.

Karen also argues that the trial court acted unfairly when, in pretrial motions *in limine,* it ruled that evidence of marijuana found in Wilmer's pants pocket would not be admissible, but that evidence of marijuana and paraphernalia found in Karen's purse would be admissible. Wilmer, however, had been tested for drug usage after the accident, and it was conclusively established that Wilmer had not ingested marijuana in the 24–hour period preceding the accident. Accordingly, evidence of Wilmer's possession of marijuana could not properly be used to show that he had used marijuana that night. No similar drug tests were performed on Karen, and thus it was a fact question for the jury whether she had ingested marijuana that night.

We conclude that the evidence of Karen's possession of marijuana and paraphernalia was not irrelevant as a matter of law. Rather, admission of this evidence was a matter within the trial court's discretion. Since we are remanding for retrial, it will again be for the trial court to exercise its discretion in determining the relevancy and admissibility of this evidence.

Karen also argues that the trial court erred in admitting this evidence because, even if relevant, its probative value was outweighed by its prejudicial effect. NDREv 403 says:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

The delicate balancing required by the Rule, taking into account the state of the evidence and pleadings at the time the evidence is offered, makes this a determination especially suited to the discretion of the trial court. *See State v. Haugen,* 448 N.W.2d at 195. It will be for the trial court upon retrial to assess the dynamics of the trial, weigh the competing factors, and exercise its discretion in admitting or excluding this evidence.

■ Karen argues that her drug possession was greatly overemphasized by the

defendants during trial, resulting in a trial of her character rather than a trial of the merits. We agree. Although the trial court stated that it would allow only limited use of this evidence and would not permit it to "confuse the issues," counsel for Karen has documented over 130 references to drug use or possession during trial. Thus, Karen's possession of the marijuana and paraphernalia, which had limited circumstantial relevance, became a dominant theme of the trial. Although the trial court has broad discretion over the presentation of the evidence and the conduct of the trial, it must exercise this discretion in a manner that best comports with substantial justice. *Ward v. Shipp*, 340 N.W.2d 14, 18 (N.D.1983). We caution that if this evidence is admitted on retrial, the trial court must recognize its responsibility to control its use to prevent it from predominating the trial.

### III. JURY INSTRUCTIONS

Karen argues that various jury instructions given by the trial court were erroneous.

At the outset, we address Wold's counter argument that Karen has waived her right to object to the jury instructions on appeal because she failed to move for a new trial. Wold argues that *Andrews v. O'Hearn*, 387 N.W.2d 716 (N.D.1986), requires that a party challenge jury instructions first in the trial court through a motion for a new trial before the challenge may be made on appeal.

We have rejected the notion that a motion for a new trial is a precondition for a valid appeal. *Swiontek v. Ryder Truck Rental, Inc.*, 432 N.W.2d 893, 895–896 (N.D.1988). Our holding in *Andrews* requires only that, if a motion for new trial is made, alleged errors in the jury instructions which are not raised in the motion may not be raised in a subsequent appeal. We conclude that Karen did not waive alleged errors in the jury instructions by failing to move for a new trial.

Karen argues that the trial court unduly emphasized a portion of the comparative negligence instruction by underlining that portion when it was submitted to the jury. As given, the instruction said:

Our law provides that the negligence of the plaintiff shall not bar her recovery of damages in this action if her negligence was not as great as the negligence of the person against whom recovery is sought, but *any damages allowed shall be diminished or reduced in proportion to the amount of negligence attributable to the plaintiff.*

"Contributory negligence" is ordinary negligence on the part of the injured person making claim which caused her own injury or damages. Stated somewhat differently, "contributory negligence" is "ordinary negligence" on the part of the person injured which combined or concurred with the negligence of another and so helped cause or bring about the injury for which claim is made.

If you find that the plaintiff was injured and damaged and that those damages were caused by the defendant or defendants in this case, then you must determine to what extent the negligent conduct, if any, of each party caused the damages sustained, expressed as a percentage of 100%.

Then, without taking into consideration the reduction of damages due to the negligence of the party being awarded damages, you must find the total damages sustained by that party. The Court will reduce the total amount of damages you have awarded any party entitled to recover by the percentage of negligence you find is attributable to that party.

The emphasis was made by the trial court.

The only North Dakota case that addresses underlining in jury instructions is *Kunze v. State Farm Mutual Automobile Insurance Co.*, 197 N.W.2d 685, 694 (N.D.1972). *Kunze* held that it was harmless error for the trial court to underline, in its instructions to the jury, the law covering the single basic issue in the case. *See also John Deere Co. v. Nygard Equipment, Inc.*, 225 N.W.2d 80, 93 (N.D.1974) (repetition in instructions that may have over-emphasized one rule of law was not,

standing alone, reversible error); *Johanson v. Nash Finch Co.*, 216 N.W.2d 271, 278 (N.D.1974) (same). However, the general rule, recognized in these cases, is that jury instructions should not give undue emphasis to any phase of the case favorable to either side, and that even correct statements of the law, if unduly emphasized, may be reversible error. *See, e.g., Burns v. Rodriquez*, 448 N.W.2d 673, 675 (Iowa Ct.App.1989); *Mueller v. Mueller*, 88 S.D. 446, 221 N.W.2d 39, 42 (1974); 75 Am. Jur.2d Trial § 641 (1974). In this case, the underlining emphasis was undue.

We can discern no proper or logical purpose to be served by the underlining in this jury instruction. The court's improper emphasis of language directing that the plaintiff's damages be diminished or reduced by her percentage of negligence could serve only to confuse and mislead the jury. Although a separate paragraph of the instruction explained that it was the trial court's function to make the reduction, the court's underlining of this one passage may well have misled the jurors into believing that it was their function to diminish or reduce Karen's actual damages. Given the complex and voluminous nature of the case, the trial court's undue emphasis of this one phrase in one instruction amounted to an open invitation to jury error.

This error may have also contributed to the jury's inexplicable determination of damages. It is one of numerous instances that indicate that the trial court unfairly postured this case in favor of the defendants. Upon retrial, the trial court should make certain that balanced, fair instructions are given without undue emphasis.

Karen challenges several other instructions given to the jury. Because these questions are not certain to recur upon retrial, and may be affected by variances in the evidence or by other factors, we deem it unnecessary to address them.[3]

## IV. PUNITIVE DAMAGES

■ Karen argues that the trial court erred when it refused to allow reinstatement of her claim for punitive damages against the County. We agree.

■ As a prerequisite to an award of punitive damages, the jury must find oppression, fraud, or malice, actual or presumed. NDCC 32–03–07; *Dahlen v. Landis*, 314 N.W.2d 63, 69 (N.D.1981). Presumed malice may be found where the defendant's conduct amounts to a reckless disregard of the rights of others. *See Dahlen v. Landis*, 314 N.W.2d at 69; *Herold v. Burlington Northern, Inc.*, 761 F.2d 1241, 1248 (8th Cir.1985); 22 Am. Jur.2d Damages §§ 763, 765, 770 (1988). The determination whether the defendant's conduct was reckless is a question of fact, based upon the circumstances of each particular case, for the jury. *Dahlen v. Landis*, 314 N.W.2d at 69. These standards guide our analysis.

The trial court issued a pretrial, partial, and summary judgment dismissing Karen's claims for punitive damages against Wold, Byron, and the County, holding that there was no evidence to support a finding of oppression, fraud, malice, or reckless disregard of the rights of others. The court then stated that there was "no evidence to show that anyone requested or recommended that the [County] sign it immediately." At trial, however, there was substantial evidence from which the jury could have found that the County had been told to immediately sign the intersection. The State Highway Department supervisor overseeing the project testified that he specifically advised the County over a year before the accident occurred to place a warning sign at this intersection. Other testimony supports an inference that the County had been told on three separate occasions, by either the State Highway Department supervisor or by a Wold engineer, to place warning signs at this intersection.

---

**3.** Because the other challenged instructions may be affected by differences in the pleadings and evidence upon retrial, Karen is free to raise these questions again upon retrial and we leave them for the trial court's consideration then. These instructions do not become the law of the case.

Karen, believing that this evidence supported an inference that the County had acted with reckless disregard for the rights of others, moved during trial for reinstatement of her claim for punitive damages against the County.[4] The trial court denied the motion, mistakenly concluding that the evidence did not support an inference of recklessness.

Recklessness is a question for the jury unless reasonable minds could reach but one conclusion. *See Dahlen v. Landis*, 314 N.W.2d at 69; *Butz v. Werner*, 438 N.W.2d 509, 516 (N.D.1989). Summary judgment is not appropriate if reasonable differences of opinion exist as to the inferences to be drawn from the facts. *Canterra Petroleum, Inc. v. Western Drilling & Mining Supply*, 418 N.W.2d 267, 270 (N.D.1987). We must view the evidence in the light most favorable to Karen. *Id.* We conclude that reasonable differences of opinion could exist as to the inferences to be drawn from the evidence, and that reasonable minds could reach more than one conclusion on the question of recklessness by the County.

■ The evidence in this case would support a finding that the County ignored for over a year repeated admonitions that warning signs were needed at this intersection. It was for the jury to draw the inferences from the evidence and determine whether the County's conduct demonstrated a reckless disregard for the rights of others. The trial court erred when it refused to revise its pretrial, partial, and summary judgment, and to reinstate Karen's claim for punitive damages against the County.[5] We direct that Karen's claim for punitive damages against the County be reinstated upon remand.[6]

## V. PHOTOGRAPHS

■ Karen offered into evidence photographs taken by a professional photographer that purported to fairly represent a driver's view of the intersection at night. The trial court refused to admit the photos during Karen's case-in-chief. Later, Karen unsuccessfully sought to introduce the photos again for cross-examination of the County's expert witness, who testified to the condition of the intersection and its appearance at night. The court finally admitted the photos on rebuttal. Karen argues that the trial court's delay in admitting the photos until rebuttal prejudiced her case and precluded her from using the photos to cross-examine defense witnesses who testified to the condition and appearance of the intersection. We agree.

The trial court is allowed great latitude and discretion in conducting the trial. *Ward v. Shipp*, 340 N.W.2d at 17. Similarly, the admission of demonstrative evidence, including photographs, is a matter largely left to the sound discretion of the trial court. *Butz v. Werner*, 438 N.W.2d 509, 518 (N.D.1989); *Holten v. Amsden*, 161 N.W.2d 478, 484 (N.D.1968). That discretion should be fairly and soundly exercised.

Upon remand, the trial court should determine whether, when, and how to admit this evidence, based upon the state of the

4. Karen did not seek reinstatement of her claim for punitive damages against Wold or Byron, and she concedes that this part of her appeal relates to the County alone.

5. Absent proper certification under NDRCivP 54(b), an order or judgment which adjudicates fewer than all of the claims against all of the parties is subject to revision by the trial court at any time before entry of a final judgment adjudicating all claims of all parties. *United Hospital v. D'Annunzio*, 462 N.W.2d 652, 653 (N.D. 1990). In requiring strict compliance with Rule 54(b) as a prerequisite to an interlocutory appeal, we have often pointed out that developments during trial may affect a prior, partial, and summary judgment, rendering appellate

consideration of intermediate orders premature. For example, *Union State Bank v. Woell*, 357 N.W.2d 234, 238 (N.D.1984). This case provides an excellent example of subsequent developments during trial affecting a prior, partial, and summary judgment. *See Smith v. Vestal*, 456 N.W.2d 502, 506 (N.D.1990) (pointing out that future discovery might require reconsideration of a prior, partial, and summary judgment dismissing certain claims).

6. The County observed, in a footnote in its brief, that NDCC 32–12.1–03(2) has been amended to prohibit an award of punitive damages against a political subdivision. The County does not, however, argue that the amended statute applies in this case.

evidence and circumstances presented upon retrial. In light of the unusual procedure accompanying admittance of this evidence at the first trial, however, we remind court and counsel of our admonition in *Ward v. Shipp*, 340 N.W.2d at 18:

> We are mindful of the necessity of the trial court having complete control over the proceedings before it, and of the broad discretion placed in the trial court in conducting such proceedings, but this discretion must be exercised in a manner which best comports with substantial justice.

## VI. CHANGE OF JUDGE AND VENUE

██ Karen asks that another district judge be assigned to preside over this case upon remand.

Karen relies upon *Blomquist v. Clague*, 290 N.W.2d 235 (N.D.1980), and *United Hospital v. Hagen*, 285 N.W.2d 586 (N.D. 1979). Those cases, however, do not support Karen's argument. In *Blomquist* and *Hagen* we held that where there has been a plausible allegation of prejudice against the trial judge, we favor granting the request for change of judge if the judge will be presiding over the retrial on the merits. In this case, however, the trial judge would not be determining factual issues on the merits, but would be presiding over a jury trial. *Blomquist* and *Hagen* suggest that we apply a stricter standard when allegations of prejudice are made against a judge who will try the case without a jury upon retrial.

Karen has not pointed to specific instances in the record to support her conclusory allegation that this trial judge is prejudiced or biased against her. We will not automatically grant a request for a change of judge based upon unproved allegations of bias or prejudice, although we do not preclude the trial court from considering such a request upon remand. *See Vorachek v. Citizens State Bank of Lankin*, 461 N.W.2d 580, 586 (N.D.1990). We decline to order that a different judge preside over the case on remand.

██ Karen also requests that we order a change of venue from Pierce County, asserting that she cannot receive a fair trial there. The question of whether a change of venue is necessary to obtain a fair and impartial trial is a question of fact. *Jerry Harmon Motors, Inc. v. First National Bank & Trust Co.*, 440 N.W.2d 704, 708 (N.D.1989). The trial court, having more complete knowledge of the facts and circumstances of the case, is in a better position than the appellate court to make this determination. *Id.* Furthermore, the usual practice is to defer ruling upon the motion until the completion of *voir dire*, because a better assessment of prejudice may be made at that time. *Id.* at 711. We conclude that the question of changing venue should be decided by the trial court on remand.

Resolution of this question on the record on appeal would be hindered by our inability to assess contemporaneous factors. *See Bohn v. Johnson*, 371 N.W.2d 781, 790 n. 2 (N.D.1985). The accident occurred nearly five years ago and it has been nearly two years since the first trial. The passage of time may have softened public sentiment concerning the case. Conversely, media coverage of the result in the first trial may have adversely affected public perception of the case. These are factors for consideration by the trial court, not for this court on appeal.

Our disposition of this appeal makes it unnecessary to reach the remaining questions raised by the parties. We reverse the judgment and remand for a new trial in accordance with this opinion.

ERICKSTAD, C.J., and LEVINE, VANDE WALLE and GIERKE, JJ., concur.