**James E. DALE, on behalf of the heirs at law of Jason D. Dale, decendent, Plaintiff and Appellant,**

v.

**John A. CRONQUIST, Defendant and Appellee.**

Civ. No. 920043.

Supreme Court of North Dakota.

Dec. 14, 1992.

---

J. Lee McNeely (argued) of McNeely, Sanders, Stephenson & Thopy, Shelbyville, IN, and Scott R. Hasbrouck (appearance) of German, Neil & Hasbrouck, East Grand Forks, MN, for plaintiff and appellant.

Howard D. Swanson (argued) of Letnes, Marshall, Fiedler & Clapp, Grand Forks, for defendant and appellee.

JOHNSON, Justice.

James Dale, on behalf of the heirs of Jason D. Dale, appeals from the judgment of the district court in a wrongful death action, where a jury found in favor of the defendant, John Cronquist. We affirm.

Jason Dale died on July 6, 1988, when the utility vehicle [1] he was driving rolled over on a road near Gilby, North Dakota. At the time of the accident, Jason was acting as an employee of K & K Farms of rural Gilby. K & K Farms was a partnership formed by Kim and Kent Cronquist. They leased the truck from their father, John Cronquist, under an oral agreement made in 1985 when the Cronquist sons took over their father's farming operation. The lease agreement included other farm equipment and land owned by John Cronquist. K & K Farms used the truck primarily for checking grain bins. The truck was also used as part of a service agreement with the Gilby Telephone Company.

On the day of the accident, Jason was instructed by Kim to pick up the truck at the Gilby telephone office and drive it to the farm. On the way to the farm, the vehicle left the road, traveled over 200 feet in the ditch, pulled back on to the road, then rolled over on the pavement.

James Dale, Jason's father, sued John Cronquist on January 25, 1990, alleging that John Cronquist negligently maintained and serviced the vehicle thereby causing the death of Jason. At trial, Dale argued that Cronquist was responsible for the truck's condition and that he knew, or

should have known, that the truck had a defective steering apparatus. At the close of trial, the court gave jury instructions which are the focus of this appeal. The court instructed that an owner of a vehicle, absent a lease agreement, is liable for injuries caused by a defect in the vehicle if: (1) the owner had actual knowledge of the defective condition; or, (2) the owner should reasonably have known of the defective condition. If the vehicle is leased, the owner no longer has any control over the use of the vehicle, and the lessee has exclusive control over the vehicle, the court instructed:

The owner is not responsible for defects which arise after the vehicle left the owner's exclusive control, unless you find (1) that the owner agreed to continue maintenance responsibility for the vehicle, or (2) if you find that the owner, although having leased the vehicle to a third party and no longer having any right to control the use of the vehicle, had actual knowledge of the defect at the time of the accident which caused the vehicle to be in an unsafe condition as to endanger those using the vehicle. If either (1) or (2) are established, negligence may be found.

The court also allowed the jury, over counsel's objection, to consider whether speed caused the accident by instructing:

It is presumably lawful for the driver of a vehicle upon a highway, to drive the vehicle at a speed not exceeding 55 miles per hour. Regardless of any posted speed limit, driving at a rate of speed that is unsafe is unlawful.

A person may not drive a vehicle upon a highway at a speed greater than the speed limit or greater than is reasonably safe and prudent under the conditions then existing, having regard to any actual and potential hazards. Conversely, a person may not drive a motor vehicle at such a slow speed as to impede the normal and reasonable movement of traffic.

---

**1.** The vehicle was a 1963 International utility or telephone truck equipped with a hydraulic lift bucket. Testimony indicates the bucket gave the vehicle a high center of gravity.

The jury returned a verdict in favor of Cronquist, finding specifically that K & K Farms leased the truck in 1985, and John Cronquist did not have maintenance responsibility for the truck after the lease, nor did he have any right to control the vehicle's use, in whole or part, under the lease. The jury also found that the truck had a defective steering apparatus on the day of the accident, but not at the time of leasing. The jury determined that Cronquist did not have actual knowledge of the defect on the day of the accident, nor should he have been aware of the defect. Finally, the jury found that the defect was not the proximate cause of Jason's death.

On appeal, Dale contends the court committed reversible error by: (1) failing to instruct the jury, as requested, on the statutory duty of Cronquist to maintain the vehicle; and, (2) instructing the jury that the issue of speed could be considered in determining fault attributable to Jason.

Dale argues that, under North Dakota law, an owner of a vehicle is responsible for its condition, regardless of the fact that the vehicle is subject to a lease, if the owner knew, or reasonably should have known, of the existence of a defective condition in the vehicle. Therefore, the trial court should have instructed the jury that John Cronquist was liable if he should reasonably have known of a defective condition. We disagree.

Dale cites *Lacy v. Grinsteinner*, 190 N.W.2d 11 (N.D.1971), to support his argument. In *Lacy*, an auto dealership loaned a car to Grinsteinner while his car was being repaired. Grinsteinner struck and injured Lacy with the loaned car when its brakes suddenly failed. This Court held that the dealership, as owner and bailor of the vehicle, could be held liable, irrespective of any common law duty, because of the vehicle's failure to meet statutory safety standards. Liability could attach if the dealer knew, or should have known, that the brakes were defective.

■ In *Lacy*, the issue was whether the dealership was negligent in failing to furnish Grinsteinner with an automobile in good and safe operating condition. This Court's inquiry focused on the condition of the car at the time it was delivered to Grinsteinner. We also stated the general rule that a bailor cannot ordinarily be held liable for defects which arise after the delivery of the vehicle to the bailee. *Id.* at 21. *See also Garner v. Todd*, 361 N.W.2d 459 (Minn.App.1985); *Rigby v. Suburban Rendco, Inc.*, 548 F.Supp. 202 (D.Del.1982); *Stilley v. Auto Enterprises of High Point*, 55 N.C.App. 33, 284 S.E.2d 684 (1981). Under Dale's reasoning, a lessor [2] would be subject to continuing liability for injuries to third parties caused by defects that arise after leasing, even though the lessee has exclusive control over the vehicle. We decline to adopt such a rule, and conclude that the trial court correctly stated the law.

Dale's next contention is that there was insufficient evidence to support a jury instruction that allowed speed to be considered as a factor in the accident. He asserts that the instruction gave Cronquist's counsel a "platform" to argue speed as the proximate cause of the accident, contrary to all the evidence at trial. In addition to the lack of evidence, Dale cites to *Slaubaugh v. Slaubaugh*, 466 N.W.2d 573 (N.D.

---

2. We use the terms "bailment" and "lease" and their derivatives interchangeably for the purpose of this appeal. A bailment is defined in Blacks Law Dictionary, 6th Ed., at p. 141, (1990) as "[a] delivery of goods or personal property, by one person (bailor) to another (bailee), in trust for the execution of a special object upon or in relation to such goods, beneficial either to the bailor or bailee or both, and upon a contract, express or implied, to perform the trust and carry out such object, and thereupon either to redeliver the goods to the bailor or otherwise dispose of the same in conformity with the purpose of the trust." The letting of a chattel for hire has been termed a bailment locatio rei. *See Buckey v. Indianhead Truck Line, Inc.*, 234 Minn. 379, 48 N.W.2d 534, n. 3 (1951). Under modern classifications, the present lease arrangement most likely is a bailment for mutual benefit or a bailment lease. *See* 8 Am.Jur.2d, *Bailments* §§ 16–26. Generally, when referring to chattel leases, the terms do not allude to different duties. Sometimes, however, "where the terms of the lease make provisions to the contrary to the usual rules governing bailments, the provisions of the lease may govern." *Buckey v. Indianhead Truck Line, Inc., supra*, at 537, n. 3.

1991),[3] and contends that by giving the instruction, the court allowed undue emphasis to be placed on "this phantom causative element."

■ Jury instructions should fairly inform the jury of the law applicable to the case. *Gronneberg v. Hoffart*, 466 N.W.2d 809, 813 (N.D.1991). They should also fairly cover the claims made by both sides of the case. *Wasem v. Laskowski*, 274 N.W.2d 219, 226 (N.D.1979). "Instructions on issues or matters not warranted by the evidence are erroneous, but constitute reversible error only when calculated to mislead the jury or, in other words, when they are prejudicial." *Mills v. Roggensack*, 92 N.W.2d 722, 725 (N.D.1958); *Leake v. Hagert*, 175 N.W.2d 675, 686 (N.D.1970).

The record indicates that there was no testimony as to the speed Jason was going at the time of the accident. Trooper Holden, the police officer who investigated the accident scene, testified that speed is an element in rollovers, but in his judgment, it was not a factor in Jason's accident. He stated that the accident happened very quickly. The plaintiff's expert also testified that speed is a factor in rollovers, but in Jason's case "speed had nothing to do with the accident." Kim Cronquist testified that the vehicle could be driven safely at 50 to 55 miles per hour. Additionally, a former employee of K & K Farms testified that he drove the vehicle within the farmyard, and when he hit ruts the wheels would turn sharply.

■ When a trial court has chosen a specific instruction, a reviewing court should not be quick to second-guess its choice, if there is evidence or inferences from the evidence to support it. The trial process is still more art than science. Only scant evidence may be needed to support a jury instruction, *see Klanseck v. Anderson Sales & Service*, 426 Mich. 78, 393 N.W.2d 356, 362 (1986). "[W]here there is no evidence to support a particular theory, there

should be no instruction on it; but if the evidence admits of more than one inference, an instruction is proper." *Daugherty v. May Brothers Company*, 265 Minn. 310, 121 N.W.2d 594, 601 (1963). The court may have erred in giving the instruction as there was no testimony with respect to the speed Jason was driving at the time of the accident. Any such error, however, was harmless.

The jury found that, at the time of leasing, the defect in the steering apparatus did not exist. The jury also found that, at the time of the accident, John Cronquist did not know of the defect, nor should he have known of the defect. Cronquist thus could not be held liable. These findings indicate that speed as the proximate cause of the accident was immaterial to the verdict. The plaintiffs did not prevail because they failed to prove that John Cronquist was responsible for a defective condition in the vehicle. Instructions that could not possibly mislead a jury or have affected the verdict do not constitute reversible error. *Wall v. Zeeb*, 153 N.W.2d 779, 784 (N.D. 1967); *see also Richie v. Elmquist*, 283 Minn. 375, 168 N.W.2d 332 (1969). Accordingly, we find the analogy to *Slaubaugh v. Slaubaugh, supra,* unpersuasive.

The judgment is affirmed.

ERICKSTAD, C.J., and VANDE WALLE, MESCHKE and LEVINE, JJ., concur.

---

**3.** In *Slaubaugh,* we ruled that the trial court placed undue emphasis upon a jury instruction when it underlined a comparative negligence standard. We stated that "jury instructions should not give undue emphasis to any phase of the case favorable to either side, and that even correct statements of law, if unduly emphasized, may be reversible error." *Id.* at 581.